**No. 15-1859**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

---

MARY T. JANETOS and ERIK KING, on behalf of a class,
PAMELA FUJIOKA and IGNACIO BERNAVE,

Plaintiffs-Appellants,

v.

FULTON FRIEDMAN & GULLACE, LLP and ASSET ACCEPTANCE, LLC,

Defendants-Appellees.

---

Appeal from The United States District Court
for the  Northern District of Illinois
No. 12 C 1473
The Honorable Thomas M. Durkin, Judge

---

**BRIEF AND REQUIRED SHORT APPENDIX OF
PLAINTIFFS-APPELLANTS**

---

Daniel A. Edelman (Counsel of Record)
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER  & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
courtecl@edcombs.com
*Counsel for Plaintiffs-Appellants*

---

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No:          15-1859

Short Caption:               Janetos et al. v. Fulton Friedman & Gullace, LLP, et al.

     To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or *amicus curiae*, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

     The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first.  Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):

    **Mary T. Janetos, Erik King, Pamela Fujioka, Ignacio Bernave**

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    **Edelman, Combs, Latturner & Goodwin, LLC**

(3)    If such party or amicus is a corporation:
    (i)    Identify all its parent corporations, if any; and   **N/A**
    (ii)    list any publicly held company that owns 10% or more of the party's or amicus' stock:  **N/A**

    Attorney's Signature: s/Daniel A. Edelman   Date:   8/12/15
                        Daniel A. Edelman
    Attorney's Printed Name:  Daniel A. Edelman
    Please indicate if you are *Counsel of Record*
    for the above listed parties pursuant to Circuit Rule 3(d).   Yes **__X__**   No _____
    Address:               20 South Clark Street, Suite 1500, Chicago IL 60603
    Phone Number:   (312) 739-4200
    Fax Number:      (312) 419-0379
    E-Mail Address:  courtecl@edcombs.com

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

JURISDICTIONAL STATEMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

ISSUES PRESENTED FOR REVIEW  . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    I.      STANDARD OF REVIEW  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    II.     THE LETTER AT ISSUE VIOLATES SECTIONS
            1692g(a)(2), 1692e AND 1692e(10) OF THE FDCPA . . . . . . . . . . 15

            A.     The Body of The Letter . . . . . . . . . . . . . . . . . . . . . . . . . 16
            B.     The Information Before The Salutation . . . . . . . . . . . . . . . 17

    III.    AN AMBIGUOUS DISCLOSURE IS NO DISCLOSURE AT ALL
            AND NO EXTRINSIC EVIDENCE IS NEEDED TO CONCLUDE
            THAT THE LETTER IS CONFUSING TO THE UNSOPHISTICATED
            CONSUMER  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    IV.    THE DISTRICT COURT ENGAGED IN AN IMPERMISSIBLE
            ABROGATION OF CONGRESSIONALLY MANDATED
            DISCLOSURES BY REQUIRING A SHOWING OF MATERIALITY
            TO ESTABLISH A VIOLATION OF THOSE DISCLOSURES . . . . . 26

    V.     FAILURE TO DISCLOSE THE NAME OF THE CURRENT
            CREDITOR IS A MATERIAL VIOLATION OF SECTIONS
            1692e AND 1692e(10) AS WRITTEN IDENTIFICATION OF
            THE CURRENT CREDITOR IS NECESSARY TO PREVENT
             AND PROSECUTE FRAUD AS WELL AS TO PROVIDE
            INFORMATION TO CONSUMERS  . . . . . . . . . . . . . . . . . . . . . . . 28

    VI.    THE DISTRICT COURT'S IMPROPER ABROGATION OF
            THE STATUTORY REQUIREMENT IS ILLUSTRATED BY
            ITS DISMISSAL OF THE CLAIMS OF JANETOS AND BERNAVE

ON THE THEORY THAT A COMPETENT ATTORNEY COULD FERRET OUT THE INFORMATION REQUIRED TO BE DISCLOSED BY STATUTE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

VII.    ASSET IS LIABLE FOR FFG'S ACTIONS  . . . . . . . . . . . . . . . . . . 35

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

STATEMENT PURSUANT TO CIRCUIT RULE 30 . . . . . . . . . . . . . . . . . . . . 38

TYPE VOLUME CERTIFICATION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

INDEX TO SHORT APPENDIX  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

SHORT APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

**TABLE OF AUTHORITIES**

## CASES

*Alger v. Ganick, O'Brien & Sarin*, 35 F. Supp. 2d 148, 153 (D. Mass. 1999) . . 37

*Artuz v. Bennett*, 531 U.S. 4, 10 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . 23

*Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) . . . . . . . . . . . . . . . . . 23, 26

*Campuzano-Burgos v. Midland Credit Management, Inc.*, 550 F.3d 294, 298 (3rd Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Caron v. Maxwell*, 48 F. Supp.2d 932, 936 (D. Ariz. 1999) . . . . . . . . . . . . . 37

*Chase Bank USA, N.A. v. Cardello*, 27 Misc. 3d 791, 896 N.Y.S.2d 856, 857-58 (Richmond Co. Civ. Ct. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944 (7th Cir. 2004) . . . . 14, 23-26

*Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 133 (E.D.N.Y. 2007) . 19

*Ditty v. CheckRite*, 973 F. Supp. 1320, 1333 (D. Utah 1997) . . . . . . . . . . . . 37

*Dryden v. Lou Budke's Arrow Finance Co.*, 661 F.2d 1186 (8th Cir. 1981) . . . 36

*Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) . . . 23

*Edwards v. Velocity Investments, LLC*, 1:10 CV 1798, 2011 WL 4007394 (N.D. Ohio Sept. 8, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769 (7th Cir. 2007) . 35,36

*Farber v. NP Funding II L.P.*, No. CV-96-4322, 1997 WL 91335 (E.D. N.Y. Dec. 9, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Federal Trade Commission v. Pinnacle Payment Services, LLC, et al.*, 1:13cv3455 (N.D. Ga.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Federal Trade Commission and State of Illinois v. K.I.P., LLC, et al.*, 15 cv 02985 (N. D. Ill.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Federal Trade Commission v. American Credit Crunchers, LLC, et al.*, 12cv1028 (N.D. Ill.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Federal Trade Commission v. Broadway Global Master Inc., et al.*, 2:12cv00855-JAM-GGH (E.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Federal Trade Commission v. Williams, Scott & Associates, LLC, et al.*, 1:14cv1599 (N.D. Ga.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Fox v. Citicorp Credit Servs.*, 15 F.3d 1507, 1516 (9th Cir. 1994) . . . . . . 16, 37

*Gibson v. Bob Watson Chevrolet-Geo, Inc.*,112 F.3d 283 (7th Cir. 1997) . . . . . 26

*Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011) . . . 21

*Hahn v. Triumph P'ships*, 557 F.3d 755, 757 (7th Cir. 2009) . . . . . . . . . . . . 29

*Hallstrom v. Tillamook County*, 844 F.2d 598, 600-01 (9th Cir. 1987) . . . . . . 28

*Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013) . . . . . . . . . . . . . 16

*Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 613 (6th Cir. 2009) . . . . 19

*Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998) . . . . . 16

*Herman v. New York Metro Area Postal Union*, 30 F. Supp. 2d 636, 648 (S.D. N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Fetner*, 218 B.R. 262 (Bankr.D.D.C. 1997) . . . . . . . . . . . . . . . . . . . . . 36

*In re Moore*, 175 B.R. 13, 17 (Bankr.S.D.Ohio 1994) . . . . . . . . . . . . . . . . . . 36

*Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1486 (M.D. Ala. 1987) . . . . . . 37

*Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 441 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46 (S.D.N.Y.1999) . . . . . . . . . . . . . . . 36

*Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lee v. Forster & Garbus LLP*, 12 cv 420, 2013 WL 776740, *3 (E.D. N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 29, 30

*Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012) . . . . . . . . . . . . 19, 23, 25

*Mark v. J. C. Christensen & Assoc., Inc.*, 09-100, 2009 WL 2407700, *4 (D. Minn. Aug. 4, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Martinez v. Albuquerque Collection Servs., Inc.*, 867 F. Supp. 1495, 1502 (D. N.M. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Massey v. On-Site Manager, Inc.*, 285 F.R.D. 239 (E.D. N.Y. 2012) . . . . . . 28, 29

*Nichols v. Northland Groups, Inc.*, Nos. 05 C 2701, 05 C 5523, 06 C 43, 2006WL 897867, *4, 2006 U.S. Dist. LEXIS 15037 (N.D. Ill., March 31, 2006) . . . 22, 23

*Parkis v. Arrow Fin. Servs.*, 07 C 410, 2008 WL 94798 (N.D. Ill. 2008) . . 16, 37

*Perry v. Globe Auto Recycling, Inc.*, 227 F.3d 950, 953 (7th Cir. 2000) . . . . . . 18

*Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1056 (8th Cir. 2002) . . . . . 19

*Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3rd Cir. 2000) . . . . . . . 37

*Randle v. GC Servs.*, 25 F. Supp.2d 849, 851 (N.D. Ill. 1998) . . . . . . . . . . . . 37

*Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) . . . . . . . . . . . . . . . . 21

*Ruth v. Triumph Partnerships*, 577 F.3d 790, 801-802 (7th Cir. 2009) . . . . . 23

*Schutz v. Arrow Fin. Servs., LLC*, 465 F. Supp. 2d 872, 876 (N.D. Ill. 2006) . . 37

*Sullivan v. Eichmann*, 213 Ill.2d 822, 820 N.E.2d 449, 453-54 (2004) . . . . . . 32

*Union Bank v. Wolas*, 502 U.S. 151, 158 (1991) . . . . . . . . . . . . . . . . . . . . . . 36

*Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . 22

*Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 328 (6th Cir. 2012) . . . 15, 27

*Walls v. United Collection Bureau, Inc.*, 11 C 6026, 2012 WL 1755751, 2012 U.S. Dist. LEXIS 68079 (N.D. Ill. May 16, 2012) . . . . . . . . . . . . . . . . . . . . . . 28

*Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365 (4th Cir. 2012)     15, 27, 29

*Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3rd Cir. 2000)          22

**RULES, STATUTES AND REGULATIONS**

15 U.S.C. §1692k . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

15 U.S.C. § 1692 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

15 U.S.C. § 1692e . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 14-16, 19, 20, 26, 28

15 U.S.C. § 1692e(10) . . . . . . . . . . . . . . . . . . . . . 7, 7, 8, 14-16, 19, 20, 28

15 U.S.C. § 1692g(a)(2) . . . . . . . . . . . . . . . . . . 2, 7, 13-15, 19, 20, 26, 28, 29

15 U.S.C. §1692g . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 20, 21

15 U.S.C. §1692g(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 23, 34

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

28 U.S.C. § 1337  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

735 ILCS 5/2-407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**OTHER AUTHORITIES**

American Heritage Dictionary of the English Language . . . . . . . . . . . . . . . . . 24

Black's Law Dictionary (6th  ed., p. 1497)  . . . . . . . . . . . . . . . . . . . . . . . . 24

Merriam-Websters Online Dictionary, 11th edition . . . . . . . . . . . . . . . . . . . . 24

## JURISDICTIONAL STATEMENT

This action was brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). The district court's jurisdiction derived from 15 U.S.C. §1692k and 28 U.S.C. § 1331 and § 1337. This Court's jurisdiction derives from 28 U.S.C. § 1291.

On April 13, 2015, the district court granted the motion for summary judgment of Defendants-Appellees Fulton Friedman & Gullace, LLP ("FFG") and Asset Acceptance, LLC ("Asset") (collectively "Defendants") and denied the motion for summary judgment on liability of Plaintiffs-Appellants Mary T. Janetos, Erik King, Pamela Fujioka, and Ignacio Bernave ("Plaintiffs"). (R.153; Short Appendix (hereinafter "App."), pp. 1-17; R. 154.) On April 21, 2015, Plaintiffs filed a notice of appeal. (R.155.) Plaintiffs' appeal is from a judgment that disposes of all parties' claims.

Plaintiffs Mary Janetos and Erik King, on behalf a class and sublcass certified on July 21, 2014, and Plaintiffs Pamela Fujioka and Ignacio Bernave, individually, appeal (1) the judgment entered on April 13, 2015 (R. 153-154), and (2) all previous orders affecting the judgment. Plaintiffs Fujioka and Bernave ask that the denial of Plaintiffs' motion for summary judgment be reversed outright and that a judgment of liability be entered in their favor. Plaintiffs Janetos and King ask that the denial of Plaintiffs' motion for summary judgment be reversed outright and that a judgment of liability be entered in their favor and in favor of the class and subclass of which they are

representatives.

**ISSUES PRESENTED FOR REVIEW**

      1.     Do the following initial collection letters clearly identify the current creditor or owner of the debt as required by 15 U.S.C. § 1692g(a)(2)?

# FULTON FRIEDMAN & GULLACE, LLP

## COLLECTIONS, CONSULTING & LITIGATION
### LICENSED IN AZ, CA, DC, IL, MD, MI, NY, OH, PA, TN & TX

PO BOX 2123
WARREN, MI 48090-2123

TOLL FREE 877-496-4802
EXT. 0

December 12, 2011
Re: Mary T Janetos
Asset Acceptance, LLC Assignee of CHASE BANK/ HERITAGE CHASE / CHASE
Original Creditor Acct #: XXXXXXXXXXXX7134
Fulton, Friedman & Gullace, LLP Acct #: 11-215740
Balance Due: $4608.90

Dear Sir/Madam:

Please be advised that the referenced account has been transferred from Asset Acceptance, LLC to Fulton, Friedman and Gullace, LLP.  We were advised that you represent the referenced consumer on this matter. Therefore, we are sending this letter to your attention so that you may share it with your client. If you do not represent the person identified above, please notify our office upon your receipt of this letter. If you have any questions, please do not hesitate to contact us.

If your client has already entered into a payment plan or settlement arrangement with Asset Acceptance, LLC, please note that we are committed to honoring the same.  Should you have any questions, please do not hesitate to call our offices.  All contact should now be directed to:

Fulton, Friedman & Gullace, LLP
P.O. Box 2123
Warren, MI 48090-2123
877-496-4802

Unless the consumer notifies this office within thirty (30) days after receiving this notice that the consumer disputes the validity of this claim or any portion thereof, this office will assume this debt to be valid.  If the consumer notifies this office in writing within thirty (30) days from receiving this notice that the consumer disputes the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail the consumer a copy of such judgment or verification.  If the consumer requests of this office in writing within thirty (30) days after receiving this notice, this office will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**This is an attempt to collect a debt by a debt collector.  Any information obtained will be used for that purpose.**

Very truly yours,

Dave Smith
Collections Team (Non-Attorney)
Phone: 877-496-4802 Ext. 0
Fulton, Friedman & Gullace, LLP

***Detach Lower Portion and Return with Payment***

CCGASSE02_OS_0117

PO Box 2124
Warren MI 48090-2124

ADDRESS SERVICE  REQUESTED

Fulton, Friedman & Gullace, LLP Acct #: 11-215740
Balance Past Due: $4608.90

December 12, 2011

11-215740-OS_0117      679109432

Daniel Edelman, Esq.
120 S Lasalle St 18Th FL
Chicago IL 60603-3403

FULTON, FRIEDMAN & GULLACE, LLP
PO Box 2123
Warren MI 48090-2123

3

# FULTON FRIEDMAN & GULLACE, LLP

## COLLECTIONS, CONSULTING & LITIGATION
### LICENSED IN AZ, CA, DC, IL, MD, MI, NY, OH, PA, TN & TX

PO Box 2123
WARREN, MI 48090-2123

TOLL FREE 877-692-6186
EXT. 0

December 12, 2011

Re: Asset Acceptance, LLC Assignee of AMERISTAR
Original Creditor Acct #: XX0682
Fulton, Friedman & Gullace, LLP Acct #: ████2109
Balance Due: $17479.24

Dear Erik King:

Please be advised that your above referenced account has been transferred from Asset Acceptance, LLC to Fulton, Friedman & Gullace, LLP. If you have already entered into a payment plan or settlement arrangement with Asset Acceptance, LLC, please note that we are committed to honoring the same. Should you have any questions, please do not hesitate to call our offices. All contact should now be directed to:

Fulton, Friedman & Gullace, LLP
P.O. Box 2123
Warren, MI 48090-2123
877-692-6186

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this claim or any portion thereof, this office will assume this debt to be valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

**This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose.**

Very truly yours,

Dave Smith
Collections Team (Non-Attorney)
Phone: 877-692-6186 Ext. 0
Fulton, Friedman & Gullace, LLP

***Detach Lower Portion and Return with Payment***

CCGASSE02_OS_0118

Fulton, Friedman & Gullace, LLP Acct #: ████2109
Balance Past Due: $17479.24

PO Box 2124
Warren MI 48090-2124

ADDRESS SERVICE REQUESTED

December 12, 2011

11-192109-OS_0118     679313882

Erik King

**FULTON, FRIEDMAN & GULLACE, LLP**
PO Box 2123
Warren MI 48090-2123

4

# FULTON FRIEDMAN & GULLACE, LLP
## COLLECTIONS, CONSULTING & LITIGATION
### LICENSED IN AZ, CA, DC, IL, MD, MI, NY, OH, PA, TN & TX

PO Box 2123
WARREN, MI 48090-2123

TOLL FREE 877-692-6186
EXT. O

RECEIVED
DEC 27 2011

December 12, 2011

Re: Asset Acceptance, LLC Assignee of CAPITAL ONE BANK, NA
Original Creditor Acct #: XXXXXXXXXXX3984
Fulton, Friedman & Gullace, LLP Acct #: ███3986
Balance Due: $7187.26

Dear Pamela M Fujioka:

Please be advised that your above referenced account has been transferred from Asset Acceptance, LLC to Fulton, Friedman & Gullace, LLP. If you have already entered into a payment plan or settlement arrangement with Asset Acceptance, LLC, please note that we are committed to honoring the same. Should you have any questions, please do not hesitate to call our offices. All contact should now be directed to:

Fulton, Friedman & Gullace, LLP
P.O. Box 2123
Warren, MI 48090-2123
877-692-6186

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this claim or any portion thereof, this office will assume this debt to be valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

**This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose.**

Very truly yours,

Dave Smith
Collections Team (Non-Attorney)
Phone: 877-692-6186 Ext. 0
Fulton, Friedman & Gullace, LLP

CCGA55C02_OS_0118

***Detach Lower Portion and Return with Payment***

PO Box 2124
Warren MI 48090-2124

ADDRESS SERVICE REQUESTED

Fulton, Friedman & Gullace, LLP Acct #: ███3986
Balance Past Due: $7187.26

December 12, 2011

███3986-OS_0118    679327421

Pamela M Fujioka

**FULTON, FRIEDMAN & GULLACE, LLP**
PO Box 2123
Warren MI 48090-2123

5

# FULTON FRIEDMAN & GULLACE, LLP

## COLLECTIONS, CONSULTING & LITIGATION
### LICENSED IN AZ, CA, DC, IL, MD, MI, NY, OH, PA, TN & TX

PO Box 2123
WARREN, MI 48090-2123

Toll Free 877-496-4802
Ext. O

December 12, 2011

Re: Ignacio Bernave
Asset Acceptance, LLC Assignee of HARLEM FURNITURE / WORLD FINANCIAL NETWORK NATIONAL BANK
Original Creditor Acct #: XXXXXXXXXXXX4431
Fulton, Friedman & Gullace, LLP Acct #: 11-214803
Balance Due: $5177.79

Dear Sir/Madam:

Please be advised that the referenced account has been transferred from Asset Acceptance, LLC to Fulton, Friedman and Gullace, LLP. We were advised that you represent the referenced consumer on this matter. Therefore, we are sending this letter to your attention so that you may share it with your client. If you do not represent the person identified above, please notify our office upon your receipt of this letter. If you have any questions, please do not hesitate to contact us.

If your client has already entered into a payment plan or settlement arrangement with Asset Acceptance, LLC, please note that we are committed to honoring the same. Should you have any questions, please do not hesitate to call our offices. All contact should now be directed to:

Fulton, Friedman & Gullace, LLP
P.O. Box 2123
Warren, MI 48090-2123
877-496-4802

Unless the consumer notifies this office within thirty (30) days after receiving this notice that the consumer disputes the validity of this claim or any portion thereof, this office will assume this debt to be valid. If the consumer notifies this office in writing within thirty (30) days from receiving this notice that the consumer disputes the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail the consumer a copy of such judgment or verification. If the consumer requests of this office in writing within thirty (30) days after receiving this notice, this office will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose.**

Very truly yours,

Dave Smith
Collections Team (Non-Attorney)
Phone: 877-496-4802 Ext. 0
Fulton, Friedman & Gullace, LLP

CCGASSE02_OS_0117

***Detach Lower Portion and Return with Payment***

Fulton, Friedman & Gullace, LLP Acct #: 11-214803
Balance Past Due: $5177.79

PO Box 2124
Warren MI 48090-2124
ADDRESS SERVICE REQUESTED

December 12, 2011

11-214803-OS_0117      679108757
Daniel Edelman, Esq.
120 S La Salle St 18Th FL
Chicago IL 60603-3403

**FULTON, FRIEDMAN & GULLACE, LLP**
PO Box 2123
Warren MI 48090-2123

6

2.    Did the district court err in holding that the failure to clearly disclose the current creditor or owner of the debt in the above letters was not a material violation of 15 U.S.C. § 1692g(a)(2)?

3.    Is the failure to clearly disclose the current creditor or owner of the debt in the above letters confusing to the unsophisticated consumer in violation of §§ 1692e and e(10)?

4.    If the answer to 3 above is yes, is the violation of §§ 1692e and e(10) in the above letters material?

5.    Would a competent attorney, who is not a specialist in the area of consumer financial services, be able to ascertain the identity of the current creditor from the above letters or from quick research?

## STATEMENT OF THE CASE

Plaintiffs Mary T. Janetos and Erik King brought this action claiming that an initial collection letter sent by FFG violated 15 U.S.C. § 1692g(a)(2). Plaintiffs sought damages both individually and on behalf of a class pursuant to 15 U.S.C. § 1692k. (R.1.) Plaintiffs Janetos and King later filed a First Amended Complaint. (R. 13.)

Plaintiff Pamela Fujioka filed an individual action against Defendants (1:12-cv-02128), claiming the same violation as Janetos and King. The Fujioka action was subsequently consolidated with the Janetos/King action. (R. 53.)

On August 1, 2012, Defendants moved for judgment on the pleadings. (R. 54-55.) On August 5, 2012, Plaintiffs Janetos, King, and Fujioka moved for

leave to file a second amended complaint. (R. 59-60.) The second amended
complaint named an additional plaintiff,  Ignacio Bernave, and asserted an
additional claim, under 15 U.S.C. §§ 1692e and e(10). (R. 59-60.) On March 4,
2013, the district court denied Defendants' motion for judgment on the
pleadings and granted Plaintiffs' motion for leave to file a second amended
complaint. (R. 84; App., pp. 22-39.)

On July 21, 2014, the district court certified a class defined as: "All
individuals in Illinois to whom Fulton Friedman & Gullace, LLP, sent a letter on
or after March 1, 2011, and on or before March 21, 2012, in the form
represented by Exhibit E to the Second Amended Complaint." (R. 138.) A
subclass was also certified, defined as "All individuals in Illinois to whom
Fulton Friedman & Gullace, LLP, sent a letter in care of their respective
attorneys on or after March 1, 2011 and on or before March 21, 2012, in the
form represented by Exhibit C to the Second Amended Complaint." (R. 138.)
There are approximately 19,000 Illinois residents in the class and subclass. (R.
138, p. 4.)

The parties filed cross-motions for summary judgment. (R. 109-119.)
After briefing, on April 13, 2015, the district court granted Defendants' motion
for summary judgment and denied Plaintiffs' motion for summary judgment.
(R.153; App., 1-17.) On April 21, 2015, Plaintiffs filed a notice of appeal.
(R.155; App., pp. 19-20.)

Plaintiffs are four individuals who reside in the Northern District of

8

Illinois. (R. 125, ¶¶ 1-4.) Asset was an entity engaged in acquiring and collecting defaulted consumer debts. (R. 125, ¶ 6.) FFG is a debt collection law firm organized as a limited liability partnership under New York law. (R. 125, ¶¶ 8-10.)

**Facts Relating To Plaintiff Mary Janetos**

In 2009, Asset, claiming to have purchased a delinquent credit card account ending in 7134, filed suit against Ms. Janetos in the Circuit Court of Cook County. (R. 125, ¶ 13.) Represented by counsel, Ms. Janetos won the lawsuit on July 22, 2009, and the judgment legally extinguished the claimed debt and established that Ms. Janetos did not owe it. (R. 125, ¶¶ 16-17; R. 116-1, p. 71.)

Notwithstanding the adverse judgment, some 30 months later, FFG sent Ms. Janetos's counsel a letter dated December 12, 2011 in connection with the account ending in 7134. (App., p. 18.) The body of the letter stated in relevant part:

> Please be advised that the referenced account has been transferred from Asset Acceptance, LLC to Fulton, Friedman & Gullace, LLP. . . .
>
> If your client has already entered into a payment plan or settlement arrangement with Asset Acceptance, LLC, please note that we are committed to honoring the same.

(App., p. 18.)

Before the salutation, the letter stated in relevant part:

Re: Mary T Janetos
Asset Acceptance, LLC Assignee of CHASE BANK/HERITAGE CHASE/

9

CHASE
Original Creditor Acct #: XXXXXXXXXXX7134
Fulton, Friedman & Gullace, LLP Acct #: 11-215740

(App., p. 18.) Neither Ms. Janetos nor her counsel could tell from the letter

itself who owned the account ending in 7134. (R. 116, ¶¶ 22, 61; R. 116-1, p.

10, ¶ 6, p. 117, ¶ 7.)

**Facts Relating To Erik King**

In 2008, Asset, claiming to have purchased a purported automobile

deficiency, filed suit against Mr. King in the Circuit Court of Cook County. (R.

125, ¶ 23.) Because Mr. King was unaware of the suit until after the inception

of this suit, an ex-parte default judgment was entered against him on August

14, 2008. (R. 125, ¶ 26; R. 116-1, p. 13.)

On or about December 12, 2011, some 34 months later, FFG sent Mr.

King a collection letter in connection with the alleged automobile deficiency.

(App., p. 19.) The body of the letter stated in relevant part:

> Please be advised that your above referenced account has been
> transferred from Asset Acceptance, LLC to Fulton, Friedman &
> Gullace, LLP. If you have already entered into a payment plan or
> settlement arrangement with Asset Acceptance, LLC, please note
> that we are committed to honoring the same.

(App., p. 19.) Prior to the salutation, the letter stated in relevant part:

> Re: Asset Acceptance, LLC Assignee of AMERISTAR
> Original Creditor Acct #: XX0682
> Fulton, Friedman & Gullace, LLP Acct #: [redacted] 2109

(App., p. 19.) When Mr. King reviewed the letter, he was confused as to whether

Asset or FFG was the owner of the claim against him. (R. 116, ¶ 30; R. 116-1,

10

p. 14, ¶ 7)

**Facts Relating to Pamela Fujioka**

In 2009, Asset, claiming to have purchased a purported delinquent credit card account ending in 3984, filed suit against Ms. Fujioka in the Circuit Court of Cook County. (R. 125, ¶ 31.) On January 14, 2010, Asset obtained an ex-parte default judgment against Ms. Fujioka. (R. 125, ¶ 34.)

On or about December 12, 2011, 23 months after the entry of the ex-parte default judgment, FFG sent Ms. Fujioka a collection letter in connection with the 3984 account. (App., p. 20.) The body of the letter stated in relevant part:

> Please be advised that your above referenced account has been transferred from Asset Acceptance, LLC to Fulton, Friedman & Gullace, LLP. If you have already entered into a payment plan or settlement arrangement with Asset Acceptance, LLC, please note that we are committed to honoring the same.

(App., p. 20.) Prior to the salutation, the letter stated:

> Re: Asset Acceptance, LLC Assignee of CAPITAL ONE BANK, NA
> Original Creditor Acct #: XXXXXXXXXXX3984
> Fulton, Friedman & Gullace, LLP Acct #: [redacted] 3986

(App., p. 20.) When Ms. Fujioka reviewed the letter, she was confused as to whether Asset or FFG was the owner of the account ending in 3984. (R. 116, ¶ 38; R. 116-1, p. 16, ¶ 5.)

**Facts Related to Ignacio Bernave**

In 2009, Asset, claiming to have purchased a purported credit card account ending in 4431, filed suit against Mr. Bernave in the Circuit Court of

11

Cook County. (R. 125, ¶ 39.) After Mr. Bernave retained counsel, Asset

dismissed the case without prejudice. (R. 125, ¶ 42; R. 116-1, p. 92.)

On or about December 12, 2011, 29 months later, FFG sent Mr.

Bernave's counsel a collection letter in connection with the 4431 account.

(App., p. 21.) The body of the letter stated in relevant part:

> Please be advised that the referenced account has been transferred
> from Asset Acceptance, LLC to Fulton, Friedman & Gullace, LLP. . .
> .
>
> If your client has already entered into a payment plan or
> settlement arrangement with Asset Acceptance, LLC, please note
> that we are committed to honoring the same.

(App., p. 21.) Before the salutation, the letter stated in relevant part:

> Re: Ignacio Bernave
> Asset Acceptance, LLC Assignee of HARLEM FURNITURE/WORLD FINANCIAL
> NETWORK
> Original Creditor Acct #: XXXXXXXXXXXX4431
> Fulton, Friedman & Gullace, LLP Acct #: 11-214803

(Plaintiffs' Facts ¶ 45.)  Mr. Bernave's counsel was confused as to who owned

the account ending in 4431. (R. 116, ¶ 61; R. 116-1, p. 117, ¶ 7.)

Each of the Plaintiffs' alleged debts had been incurred for personal,

family, or household purposes. (R. 125, ¶¶ 14, 24, 32, 40.) Plaintiffs Janetos,

King, and Bernave testified that they had never heard of FFG prior to receiving

or being made aware of the letter at issue. (R. 116-1, p. 10, ¶ 5; pp. 13-14, ¶ 6;

p. 19, ¶ 5.)

Asset was represented in the lawsuits against Plaintiffs by employed, in-

house attorneys, and not FFG attorneys. (R. 125, ¶¶ 15, 25, 33, 41.) FFG did

not file appearances or substitute as counsel in the King case (R. 88, ¶ 33) or in any of the cases.

The letters sent to Plaintiffs or their counsel were the initial letters sent by FFG concerning Plaintiffs' alleged debts.  (R. 125, ¶ 46.) Approximately 19,000 letters in the form sent to Plaintiffs or their counsel were sent to a class of Illinois residents or a subclass of their counsel. (R. 138, p. 4.)

It was only after an investigation by counsel for Janetos and Bernave that he determined that the debts were owned by Asset and that Asset had retained FFG to collect them. (R. 125, ¶¶ 61-62; R.116-1, p. 117, ¶¶ 8-9.)

## SUMMARY OF THE ARGUMENT

The letter at issue violates § 1692g(a)(2) of the FDCPA because it fails to state in an unambiguous fashion "the name of the creditor to whom the debt is owed". There is no plain statement such as  "Current creditor: [name]", or the like. Instead, the original creditor's account number is listed, as well as FFG's, but not Asset's. Asset is referred to as being an "Assignee" of certain entities. The letter further states that the debt has been "transferred" from Asset to FFG. At a minimum, "transferred" could mean, that ownership of the debt has been transferred or that merely the right to collect has been transferred. To Plaintiffs, to Plaintiffs' counsel, and to the unsophisticated consumer, there is no way to know for sure.

The district court erred in holding that Plaintiffs were required to provide extrinsic evidence of consumer confusion. The letter is confusing on its face in

13

the same way that *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004), was confusing on its face.

The district court erred in holding that FFG's violation of a Congressionally mandated disclosure requirement was not material. All conduct specifically prohibited or any disclosure specifically required by the FDCPA is "material." *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 328 (6th Cir. 2012) (failure to disclose current creditor a material violation of the FDCPA); *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012) (violation of 1692e(11) is always "material").

The district court erred in holding that FFG's violation of § 1692e and e(10) was not material. The violation is material because "[t]he entity to which a debtor owes money potentially affects the debtor in the most basic ways, such as what the debtor should write after "pay to the order of" on the payment check to ensure that the debt is satisfied." *Lee v. Forster & Garbus LLP*, 12 cv 420, 2013 WL 776740, *3 (E.D. N.Y. 2013). Moreover, both the Federal Trade Commission ("FTC") and the Consumer Financial Protection Bureau ("CFPB") have issued warnings about fake debt collectors engaged in collecting debts they do not own or that do not exist. Requiring debt collectors to comply with § 1692g(a)(2) combats collection fraud.

Finally, the district court erred in holding that a competent attorney, without a particular knowledge of the consumer financial services industry, would have been able to determine from a quick search that Asset owned the

14

debts and had retained FFG to collect them. Counsel for Janetos and Bernave was required to look up bar registrations of the attorneys formerly employed in-house by Asset to determine that they were now employed by FFG. There would be no reason to look up where the attorneys formerly employed by Asset had gone unless one was familiar with the company and the industry and had reason to believe that the attorneys had gone somewhere.

As FFG's actions were taken as Asset's retained counsel, Asset is liable for the actions of its agent and attorney. *Parkis v. Arrow Fin. Servs.*, 07 C 410, 2008 WL 94798, *9 (N.D. Ill. 2008); *Fox v. Citicorp Credit Servs.*, 15 F.3d 1507, 1516 (9th Cir. 1994).

## ARGUMENT

### I.     STANDARD OF REVIEW

The standard of review of an appeal of an order granting summary judgment is *de novo. Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Likewise, in an appeal from a grant of a cross motion for summary judgment, this Court reviews the entire record *de novo. Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998); *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1982). In so doing, the motions are considered separately and the Court construes all facts and draws all inferences in the light most favorable to the party against whom the motion under consideration is made. *Hendricks-Robinson*, 154 F.3d at 692.

### II.     THE LETTER AT ISSUE VIOLATES SECTIONS 1692g(a)(2), 1692e AND 1692e(10) OF THE FDCPA

FFG's letter failed to comply with 15 U.S.C. §1692g(a), which requires the

following disclosures:

> § 1692g.  Validation of debts
>
> (a) Notice of debt; contents.  Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
>
>> (1) the amount of the debt;
>>
>> (2) <u>the name of the creditor to whom the debt is owed</u>;
>>
>> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>>
>> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>>
>> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the <u>current creditor</u>. . . .

15 U.S.C. § 1692g.  (Emphasis added.)

FFG's letter was also confusing, in violation of §§1692e and e(10), which

provide in relevant part:

> § 1692e.  False or misleading representations
>
> A debt collector may not use any false, deceptive or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the

16

following conduct is a violation of this section:
. . . .
(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

## A.      The Body Of The Letter

The body of the letter states that the alleged delinquent accounts have been "*transferred* from Asset Acceptance, LLC to Fulton, Friedman and Gullace, LLP." (App., pp. 18-21, emphasis added.) This is confusing because it is not clear whether "transferred" means that ownership of the debt has been transferred or merely the right to collect the debt has been transferred.

An additional source of confusion is the sentence which states: "If you/your client have/has entered into a payment plan or settlement arrangement with Asset Acceptance, LLC, please note that we are committed to honoring the same." (App., pp. 18-21.) Both the unsophisticated consumer and the competent attorney could reasonably conclude that *the reason* FFG chose to signal its commitment to honoring prior settlement arrangements with Asset is because it had *purchased* the accounts from Asset. A purchaser of an account stands in the shoes of the assignor and is bound by the commitments made by the assignor. *Perry v. Globe Auto Recycling, Inc.*, 227 F.3d 950, 953 (7th Cir. 2000). But a client who replaces one attorney with another is bound by any settlement made while represented by the first attorney. And the second attorney is likewise bound by a prior settlement, which makes FFG's emphasis on "honoring" prior commitments confusing.

17

**B.     The Information Before The Salutation**

The information before the salutation suggests that FFG owns the debts. In the letters to Mr. King and Ms. Fujioka, the following information appears in relevant part:

> Re: Asset Acceptance, LLC Assignee of [ ]
> Original Creditor Acct #: [ ]
> Fulton, Friedman & Gullace, LLP Acct #: [ ]

(App., pp., 19-20.) And in the letters to counsel for Ms. Janetos and Mr. Bernave, the following information appears in relevant part:

> Re: [name of account holder]
> Asset Acceptance, LLC Assignee of [ ]
> Original Creditor Acct #: [ ]
> Fulton, Friedman & Gullace, LLP Acct #: [ ]

(App., pp. 18, 21.)  This information suggests that FFG owns the debts. The original creditor's account number is provided, followed by FFG's account number on the next line. Asset's account number is not provided. The close juxtaposition of FFG's account number with that of the original creditor, with Asset's account number omitted, gives the impression that FFG is the current creditor or owner.

Further, Asset is described as "Assignee" of one or more entities.  The unsophisticated consumer would not be any wiser as to who owned the debt because "assignee" is a legal word which the unsophisticated consumer would not be expected to understand. "An unsophisticated consumer cannot be expected to know the legal meaning of terms . . . ." *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1056 (8th Cir. 2002) (quoted in  *Lox v. CDA, Ltd.*, 689 F.3d

18

818, 825 (7th Cir. 2012); *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 613 (6th Cir. 2009) ("The only language in the document indicating that Great Seneca is a debt collector is the word 'assignee' a legal term that would not necessarily help the least sophisticated consumer understand the relationships between the parties listed."); *Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 133 (E.D.N.Y. 2007) ("To the least sophisticated consumer, the word 'assigned' may be vague. ")

An attorney would understand the meaning of "assignee." But the mere description of Asset as the "assignee" would not inform an attorney that Asset is the current creditor or owner of the account, as opposed to a prior owner that is being identified for descriptive purposes, in light of the other information in the letter which suggests that FFG is the creditor.

Absent from FFG's letter is an unambiguous statement of "the name of the creditor to whom the debt is owed". Instead, there is an ambiguous statement that the debt had been "transferred" in some fashion to FFG and information before the salutation that points to FFG as the owner of the debt. The letter fails to provide the disclosure required by § 1692g(a)(2) and is confusing to the unsophisticated consumer in violation of §§ 1692e and e(10).

## III.   AN AMBIGUOUS DISCLOSURE IS NO DISCLOSURE AT ALL AND NO EXTRINSIC EVIDENCE IS NEEDED TO CONCLUDE THAT THE LETTER IS CONFUSING TO THE UNSOPHISTICATED CONSUMER

In its decision denying Defendants' motion for judgment on the pleadings, the district court essentially stated that FFG's letter did *not* comply

19

with § 1692g(a)(2): "FFG's letters do not expressly identify which entity currently owns the purported debts – the headers contain various information, including references to both Asset Acceptance and FF&G, but do not actually label either entity as the owner of the purported debts." (R. 84, p. 15; App., p, 36.)

Similarly, in entering summary judgment in favor of Defendants, the district court did *not* hold that FFG's letter complied with § 1692g(a)(2). On the contrary, the district court acknowledged that the word "transfer" is ambiguous, in that it could mean that Asset had transferred ownership of Plaintiffs' alleged debts to FFG, or that merely the right to collect them had been transferred. (R. 153; App., pp. 7-8.) In fact, there are four possibilities: (1) Asset transferred ownership of the debts to FFG; (2) Asset still owned the debts but had hired FFG to collect them; (3) both the ownership and the right to collect had been transferred, so that FFG was collecting on behalf of a new owner; (4) FFG had no right to collect the debt at all (as discussed below, this is a very real possibility). It should follow that, under any of these scenarios, FFG failed to disclose an item of information required by §1692g, resulting in liability under § 1692g and §§ 1692e and e(10).

Instead, the district court held that (1) Plaintiffs should have produced extrinsic evidence to show that the unsophisticated consumer would be confused by FFG's letter and (2) even if Plaintiffs had produced such extrinsic evidence, they would still have lost the case because failing to comply with §

1692g(a)(2) is not a material violation of either § 1692g(a)(2) or §§ 1692e or

e(10). (App., pp. 9, 17.)

To avoid a finding of liability, the district court resorted to a series of

incorrect legal propositions. The district court acknowledged that some courts

have found that a collection letter which can reasonably be read as having two

or more different meanings, one of which is inaccurate, is misleading. In

addition to *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996), cited by the

district court  (R. 153, App., p. 8), the Third, Sixth and Ninth Circuits have so

held. *Gonzales v. Arrow Fin. Servs., LLC,* 660 F.3d 1055, 1062 (9th Cir. 2011)("it

is well established that '[a] debt collection letter is deceptive where it can be

reasonably read to have two or more different meanings, one of which is

inaccurate.'"); *Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d

433, 441 (6th Cir. 2008); *Campuzano-Burgos v. Midland Credit Management,*

*Inc.*, 550 F.3d 294, 298 (3rd Cir. 2008) (violation if communication "can be

reasonably read to have two or more different meanings, one of which is

inaccurate"); *Wilson v. Quadramed Corp.,* 225 F.3d 350, 354 (3rd Cir.  2000).

The district court decided not to apply this principle to FFG's letter

because (1) the Second and the Seventh Circuits use different standards -- the

"least sophisticated consumer" versus the "unsophisticated consumer"

standards – and (2) the Second Circuit treats the confusion of the least

sophisticated consumer as a question of law whereas this Circuit treats the

confusion of the unsophisticated consumer as subject to a "more demanding"

factual standard, namely whether a significant fraction of the population would find the letter misleading. (R. 153; App., pp. 8-9.) From this reasoning, the district court concluded that, as Plaintiffs had not submitted extrinsic evidence of consumer confusion (other than Plaintiffs' own affidavits) (R. 116-1, pp. 10-19), Defendants were entitled to summary judgment.

The district court's reasoning was wrong. First, this Court has held that an ambiguous disclosure violates the FDCPA. In *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003), this Court held, with respect to another disclosure required by §1692g – the amount of the debt – that "When there are two different accounts of what a debtor actually owes the creditor, that one version is the correct description does not save the other . . . under the unsophisticated debtor standard . . . ." *See also, Nichols v. Northland Groups, Inc.*, Nos. 05 C 2701, 05 C 5523, 06 C 43, 2006 WL 897867, *4, 2006 U.S. Dist. LEXIS 15037 (N.D. Ill., March 31, 2006) ("[A] collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate.")

Secondly, this Court has noted that there is no meaningful difference between the least sophisticated consumer and the unsophisticated consumer standards. *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996) ("[W]e don't want to be involved in the splitting of split hairs. Anyway it is viewed, the standard is low, close to the bottom of the sophistication meter.")

The district court's conclusion is also flatly inconsistent with this Court's

holdings that statements in collection notices that are obviously ambiguous or confusing violate the FDCPA. *Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012) (collection letter was misleading on its face and no extrinsic evidence was necessary); *Ruth v. Triumph Partnerships*, 577 F.3d 790, 801-802 (7th Cir. 2009) (no extrinsic evidence required to conclude that privacy notice violated the FDCPA); *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (recognizing that there are cases when the letter itself can "plainly reveal that it would be confusing to a significant fraction of the population"); *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) (consumer entitled to judgment as a matter of law where required disclosure was contradicted by other matter).

   *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944 (7th Cir. 2004), is very closely on point. In *Chuway*, a collection letter stated that the consumer owed $x, but added, "To obtain your most current balance information, please call [xxx-xxx-xxxx]." The consumer alleged that the resulting ambiguity – was the debt $x or some larger "current balance" – violated §1692g(a)'s requirement that the debt collector disclose "the amount of the debt". This Court agreed:

> It is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it. [citations]  Otherwise the collection agency could write the letter in Hittite and have a secure defense. The defendant concedes the principle but insists that to withstand summary judgment the plaintiff must always submit a survey or some other form of systematic empirical evidence demonstrating the propensity of the letter to confuse. There is no basis for so flat a rule.  [citations] If it is apparent just from reading the letter that it is unclear . . . and the plaintiff testifies credibly that she was indeed confused and that . . . she is representative of the type of people who received that or a similar letter, no further evidence is

23

necessary to create a triable issue.

> But if it is unclear whether the letter would confuse intended
> recipients of it, then to make out a prima facie case the plaintiff
> has to go further and present evidence (beyond her own say-so) of
> confusion, for example in the form of a carefully designed and
> conducted consumer survey. [citations]  No survey was conducted
> here, but the entire bench was confused about the meaning of the
> letter until the defendant's lawyer explained it to us at the oral
> argument, and our confusion, coupled with the plaintiff's affidavit
> in which she plausibly attested that she had been confused by the
> letter, is enough to satisfy her burden of proof. For there is no
> reason to suppose her unrepresentative of the credit card
> customers to whom such letters are sent; it is not as if the letter
> would be clear to any reasonably competent English speaker but
> that unbeknownst to the defendant the plaintiff happens not to
> have a good command of the English language. . . .

*Chuway*, 362 F.3d at 948.

Significantly, the district court decision in *Chuway* made the same error

as the district court in this case:

> The district judge acknowledged that the defendant's letter had
> "the potential to confuse an unsophisticated consumer"- called the
> letter "problematic" and said that it did "a poor job of informing an
> 'unsophisticated consumer' of what the amount of the debt is." But
> she thought that this court had established a rule that unless a
> letter contains an outright contradiction, the plaintiff must present
> evidence outside of the letter itself and her own testimony. There is
> no such rule, and it would not be a defensible gloss of the Fair
> Debt Collection Practices Act. A letter can be confusing even to a
> sophisticated reader though it does not contain an outright
> contradiction - witness the defendant's letter in this case. . . .

*Id.* at 949.

Here, the district court acknowledged that "transferred" can mean that

ownership of the debt has been transferred, or that the debt has been placed

for collection only. (R. 153; App., pp. 7-8.) (It can also mean that both of these

things have happened.) The first dictionary definition of "transfer" is "sale." *Black's Law Dictionary* (6th ed., p. 1497) ("An act of the parties, or of the law, by which the title to property is conveyed from one person to another"); *American Heritage Dictionary of the English Language* ("A conveyance of title or property from one person to another");[1] *Merriam-Websters Online Dictionary*, 11th edition ("conveyance of right, title, or interest in real or personal property from one person to another").[2]

A survey or other extrinsic evidence is only necessary when "debt collection language that is not misleading or confusing on its face, . . . has the potential to be misleading to the unsophisticated consumer. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012). It is one thing to conduct a survey where a required disclosure purports to be present and the issue is whether some other language conflicts with, or diverts attention from, the disclosure. It is another thing when the required disclosure is simply not there.

A survey of FFG's letter would invite respondents to guess who the creditor is; but a survey is not necessary to conclude that the answer to that question is not clearly stated in the letter. Measured against a requirement that the debt collector disclose who the current creditor is, the FFG letter fails in exactly the same manner as the *Chuway* letter failed. An unsophisticated consumer, or even a sophisticated jurist, can study the FFG letter as long as he

---

[1] http://www.ahdictionary.com/word/search.html?q=transfer

[2] http://www.merriam-webster.com/dictionary/transfer?show=1&t=1346789749

or she desires, and not get a clear answer to the question, "Who presently owns this debt?" The answer could be Asset, FFG, or some new and unidentified client of FFG. There is simply no way to determine which from the letter.

The district court's insistence on extrinsic evidence to determine what FFG's letter means effectively concedes that FFG made a "disclosure" in "Rorschach language whose meaning lies in the mind of the beholder." *Herman v. New York Metro Area Postal Union,* 30 F. Supp. 2d 636, 648 (S.D. N.Y. 1998). But the use of such language does not comply with a federal disclosure statute such as the FDCPA, which requires clarity and accuracy in disclosure. *Bartlett, supra,* 128 F.3d at 500 ("the debt collector may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude"); *Gibson v. Bob Watson Chevrolet-Geo, Inc.,* 112 F.3d 283, 285 (7th Cir. 1997) ("disclosure" means "accurate disclosure").

Providing the required information would not have been difficult. All that is required is a simple declaration: "Current creditor: [name]." That is what most debt collectors do. Or, as FFG has done in other letters, including letters on behalf of Asset, FFG could have said: "Creditor: [Name]", and then stated in the body of the letter that the debt had been "referred" to FFG for collection or that FFG has been "retained" to collect the debt. (R. 116-1, pp. 106-114.)

In short, no extrinsic evidence is required to determine that the

unsophisticated consumer would find the letter confusing and that §

1692g(a)2) had not been complied with.

## IV. THE DISTRICT COURT ENGAGED IN AN IMPERMISSIBLE ABROGATION OF CONGRESSIONALLY MANDATED DISCLOSURES BY REQUIRING A SHOWING OF MATERIALITY TO ESTABLISH A VIOLATION OF THOSE DISCLOSURES

The district court also stated that it saw "no reason" to limit the

judicially-imposed materiality requirement to §1692e claims. The district court

held that any violation of § 1692g(a)(2) was not a material violation. (R. 153;

App., p. 17.) This was wrong.

One obvious problem with this reasoning is that it deals with an item of

information specifically required to be disclosed by statute.  Congress has

deemed it material that debt collectors state, in initial collection letters, who

owns the debt. All conduct specifically prohibited or any disclosure specifically

required by the FDCPA is "material." *Wallace v. Wash. Mut. Bank, F.A.*, 683

F.3d 323, 328 (6th Cir.  2012) (failure to disclose current creditor a material

violation of the FDCPA); *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374

(4th Cir. 2012) (violation of 1692e(11) is always "material"); *Mark v. J. C.

Christensen & Assoc., Inc.*, 09-100, 2009 WL 2407700, *4 (D. Minn. Aug. 4,

2009) (failure to comply with an express requirement of the FDCPA is a

material violation).

The appropriate distinction is actually between acts and statements

specifically required by Congress, and generalized claims that statements or

conduct are misleading or deceptive. The "reason" is the Constitutional

27

separation of powers – when Congress has mandated a specific act or disclosure, for a court to depart from that mandate would constitute an impermissible "judicial amendment in abrogation of explicit, unconditional statutory language." *Hallstrom v. Tillamook County*, 844 F.2d 598, 600-01 (9th Cir. 1987).

Other district courts have recognized that the Congressional requirement must be enforced as written. In *Walls v. United Collection Bureau, Inc.*, 11 C 6026, 2012 WL 1755751, 2012 U.S. Dist. LEXIS 68079 (N.D. Ill. May 16, 2012) (Grady J.) the court held –

> We reject defendants' contention in their reply brief that what plaintiff is complaining of is "immaterial" information. The statute expressly requires identification of the creditor to whom the debt is owed; when that information is presented in an arguably confusing manner, it could influence the consumer's decision. For example, it could cause an unsophisticated consumer to be concerned about the possibility of being defrauded or about paying the incorrect creditor and continuing to have outstanding debt.

*Walls*, 2012 WL 1755751 at *2.

In *Massey v. On-Site Manager, Inc.*, 285 F.R.D. 239, 248 (E.D. N.Y. 2012), the court stated:

> Defendant's reliance on cases applying a materiality requirement to FDCPA §1692e claims is misplaced. Those cases address the provisions of FDCPA §1692e that prohibit false representations. In other words, they address the anti-fraud provisions of FDCPA §1692e. Materiality is almost always a required element in proving a fraud. *See Hahn v. Triumph P'ships*, 557 F.3d 755, 757 (7th Cir. 2009) ("Materiality is an ordinary element of any federal claim based on a false or misleading statement."). But FDCPA §1692e also contains other provisions that do not require a showing of materiality. For example, FDCPA §1692e(11) mandates that debt collectors disclose in the initial communication with a consumer

28

that they are attempting to collect a debt. The failure to give the required disclosure is actionable *per se*, without any requirement of materiality. *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012) ("whether a materiality requirement attaches to other violations of §1692e has no impact on [plaintiff's] allegations that the defendants violated § 1692e(11)."). Statutory damages are available for every consumer who has suffered a violation of FDCPA §1692e(11), regardless of whether they were actually injured or not.  See 15 U.S.C. §1692k(a)(2)(A).

As in *Massey* and the cases cited above, this Court should hold that it is a

material violation of § 1692g(a)(2) not to comply with it.

## V.    FAILURE TO DISCLOSE THE NAME OF THE CURRENT CREDITOR IS A MATERIAL VIOLATION OF SECTIONS 1692e AND 1692e(10) AS WRITTEN IDENTIFICATION OF THE CURRENT CREDITOR  IS NECESSARY TO PREVENT AND PROSECUTE FRAUD AS WELL AS TO PROVIDE INFORMATION TO CONSUMERS

The confusion created by FFG's letter relating to the identity of the owner

of the debt was a material violation of §§ 1692e and e(10). In *Lee v. Forster &*

*Garbus LLP*, 12 cv 420, 2013 WL 776740 (E.D. N.Y. 2013), the Court addressed

that very issue:

> Defendants fare no better insisting that any misidentification in the Collection Letter was immaterial. As an initial matter, this argument only could apply to the alleged Section 1692e and Section 1692f violations. Section 1692(g)[(a)](2) specifically requires debt collectors to identify the creditor to whom the debt is owed in the initial communication or within five days of the initial communication. There is nothing in the statute requiring the identity of the creditor to be "material" to the communication. In addition, even assuming, *arguendo,* that a deceptive statement must be material to violate Section 1692e and Section 1692f, failing to identify the creditor here was not immaterial as a matter of law. The entity to which a debtor owes money potentially affects the debtor in the most basic ways, such as what the debtor should write after "pay to the order of" on the payment check to ensure that the debt is satisfied. Accordingly, Defendants' materiality

29

argument is without merit.

*Lee*, 2013 WL 776740, at *3. In contrast, the district court thought that if a consumer sends a check payable to FFG and the check is credited by the owner of the debt, whoever that might be, the failure to comply with § 1692g(a)(2) is not material. (R. 153; App., pp. 11-12.)

The district court's reasoning ignores what Congress was attempting to accomplish by compelling every debt collector to state in writing who owns the debt.  There are formal, evidentiary, and enforcement reasons for this in addition to merely providing information to consumers about how to pay.

One reason is to enable consumers (or their attorneys) to readily investigate and confirm that the person seeking to collect money is in fact authorized to do so. The FTC has published a warning to consumers to "be on the alert for scam artists posing as debt collectors. It may be hard to tell the difference between a legitimate debt collector and a fake one. Sometimes a fake collector may even have some of your personal information, like a bank account number." The warning advises consumers to insist on receiving a validation notice which "must include . . . the name of the creditor you owe," and that consumers should not pay a collector who "refuses to give you all of this information."  If there is any question, the consumer is instructed to contact the creditor and "find out who, if anyone, the creditor has authorized to

collect the debt."[3]

The CFPB, which now has rulemaking authority with respect to the FDCPA and shares enforcement authority, has published a very similar warning.[4] Thus, not only has Congress deemed the information at issue in this case to be material, but the agencies charged with enforcing the FDCPA specifically tell consumers to act on the basis of the disclosure – to contact the person identified as the owner of the debt in the initial collection letter and to refrain from paying collectors who fail to provide the required information. An unambiguous written identification of the owner of the debt is necessary in order to do this.

The extent of the problem is illustrated by the fact that in recent years, the FTC has brought seven proceedings against such "fake debt collectors", including *Federal Trade Commission and State of Illinois v. K.I.P., LLC, et al.*, 15 cv 02985 (N. D. Ill.),[5] naming dozens of defendants. *See also, Federal Trade Commission v. American Credit Crunchers, LLC, et al.*, 12cv1028 (N.D. Ill.); *Federal Trade Commission v. Broadway Global Master Inc., et al.*, 2:12cv00855-JAM-GGH (E.D. Cal.); *Federal Trade Commission v. Williams, Scott*

---

[3]http://www.consumer.ftc.gov/articles/0258-fake-debt-collectors

[4]www.consumerfinance.gov/askcfpb/1699/how-can-i-verify-whether-or-not-debt-collector-legitimate.html

[5]www.ftc.gov/news-events/press-releases/2015/04/ftc-illinois-attorney-general-halt-chicago-area-operation-charged

*& Associates, LLC, et al.*, 1:14cv1599 (N.D. Ga.); *Federal Trade Commission v. Pinnacle Payment Services, LLC, et al.,* 1:13cv3455 (N.D. Ga.).

The problem is particularly acute with respect to debts that have been the subject of legal proceedings, such as those involved in this case. A New York state collection court judge expressed concern about loose practices in documenting the assignment of debts that have been the subject of lawsuits or reduced to judgment, which would "enable dishonest debt collectors to search the court records, obtain the names of judgment debtors and send debtors a letter stating they have purchased the debt . . . and should make all payments to the third party." *Chase Bank USA, N.A. v. Cardello*, 27 Misc. 3d 791, 896 N.Y.S.2d 856, 857-58 (Richmond Co. Civ. Ct. 2010).

This case similarly involves loose practices conducive to fraud. Under Illinois law, where a debt is the subject of a pending legal proceeding or has been reduced to judgment, the appropriate procedure is to file a motion to substitute parties. 735 ILCS 5/2-407. If a new attorney is hired with respect to a collection case, the proper procedure is to file a motion to substitute counsel. *Sullivan v. Eichmann*, 213 Ill.2d 822, 820 N.E.2d 449, 453-54 (2004). If the consumer raises a question, or the court is unfamiliar with the persons involved, the court can require an affidavit or a copy of an assignment or other sufficient proof that rights have been sold or that the persons appearing are authorized to do so.

FFG did "none of the above." It did not file a motion to substitute in the

32

*King* case (R. 88, ¶ 33) or any of the other cases. Instead, the consumers in this case got exactly what the New York judge, the FTC and the CFPB were concerned about – a letter reciting information that could be gleaned from public records and demanding that the consumer pay money to an unfamiliar entity. In this case, the letter does not even state that the sender "purchased" the debt, or who owns it.

Moreover, with respect to Ms. Janetos's debt, FFG tried to collect a debt which the Circuit Court of Cook County had already determined she did not owe.  (R. 125, ¶¶ 16-17.)

In light of the foregoing, it is clear that the requirement that each debt collector identify the owner of the debt in writing does not merely serve to convey information to the consumer. It also serves other formal, evidentiary and enforcement objectives. It forces debt collectors to create a "paper trail" regarding the ownership of debts. It permits law enforcement agencies to educate consumers to not pay debts to persons who fail to provide the required notice and to  ascertain that debts are being collected by authorized persons. Failure to comply with these requirements facilitates fraud and may also harm consumers in other ways than contemplated by the district court. For example, a consumer who wants to pay a debt, to the right person, may be delayed in doing so, incurring interest (at 9% on judgments in Illinois).

In short, the Congressionally-mandated disclosure of the current owner of the debt serves a number of real and useful purposes, and a debt collector

who fails to provide that information violates the FDCPA.

**VI.   THE DISTRICT COURT'S IMPROPER ABROGATION OF THE STATUTORY REQUIREMENT IS ILLUSTRATED BY ITS DISMISSAL OF THE CLAIMS OF JANETOS AND BERNAVE ON THE THEORY THAT A COMPETENT ATTORNEY COULD FERRET OUT THE INFORMATION REQUIRED TO BE DISCLOSED BY STATUTE**

The district court dismissed the claims of Janetos and Bernave, whose letters were sent to their counsel, because figuring out the role of FFG "would take a competent attorney a few minutes to complete and dispel any confusion created by the word 'transferred.'" (R. 153; App., pp. 12-13.) This in fact overstates the ease with which an attorney not familiar with Asset and the collection industry could locate the necessary information.

For example, correspondence (including the letters sent to Plaintiffs) sent from FFG's office located within the building housing Asset's headquarters in Warren, Michigan uses as a return address, instead of the street address of the building, a post office box not readily identifiable with Asset. In order to determine that the offices are within the same building, it is necessary to look up the bar registrations of the attorneys formerly employed in-house by Asset and now employed by FFG. There would be no reason to look up where the attorneys formerly employed by Asset had gone unless one was familiar with the company and the industry and had reason to believe that the attorneys had gone somewhere.

More importantly, counsel's conclusion that Asset still owned the

34

accounts, even if correct, is simply not the same thing as the Congressionally mandated statement by the debt collector that Asset still owned the accounts. The latter is a statement by the debt collector that creates a "paper trail" usable against it in the event of a problem. Counsel's conclusion does not and cannot serve this function. What Congress mandated was a statement by the debt collector.  Given the widespread problems with fraudulent debt collection, it is clear that requirement serves useful purposes. It is not for courts to override Congress.

If the district court's reasoning were correct, it would not be a violation for a debt collector to omit sending the required notice of the consumer's rights to counsel, who presumably are familiar with those rights. In *Evory v. RJM Acquisitions Funding L.L.C.,* 505 F.3d 769 (7th Cir. 2007), this Court held that such omission *does* violate the FDCPA:

> The required written notice must be sent to "the consumer," that is, to the person claimed to owe a debt. The consumer's lawyer is not that person. But if the debt collector knows that the consumer is represented by a lawyer, then (with immaterial exceptions) he may not communicate with the consumer directly. § 1692c(a)(2). He must go through the lawyer. The lawyer receives the notice and shares it with, or explains it to, his client. Hence the debt collector is communicating with the consumer within the meaning of the Act, which defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." § 1692a(2) (emphasis added). The lawyer is both "any person" and "any medium."

> It would be passing odd if the fact that a consumer was represented excused the debt collector from having to convey to the consumer the information to which the statute entitles him. For example, sections 1692g(a)(1) and (2) provide that the required notice must state the amount of the debt and the name of the

creditor. Is it to be believed that by retaining a lawyer the debtor disentitles himself to the information? Or that the debt collector, though knowing that the debtor is represented, can communicate directly with him in defiance of the principle that once a party to a legal dispute is represented, the other party must deal with him through his lawyer, and not directly? We conclude that any written notice sent to the lawyer must contain the information that would be required by the Act if the notice were sent to the consumer directly. National Consumer Law Center, Consumer Credit Law Manual § 8.02[5][b] (2004); *cf. Heintz v. Jenkins*, 514 U.S. 291 (1995).

*Evory*, 505 F.3d at 773.

Under the same reasoning employed by the district court, it would be permissible for a debt collector or other party required to make disclosures in writing to provide the information orally.  But it is well established that a statutory requirement that information be disclosed in writing is not complied with by providing the information orally. *Dryden v. Lou Budke's Arrow Finance Co.*, 661 F.2d 1186, 1190 (8th Cir. 1981) (Truth in Lending Act); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46 (S.D.N.Y.1999) (Bankruptcy Code);  *In re Fetner*, 218 B.R. 262 (Bankr.D.D.C. 1997) (Bankruptcy Code)*; In re Moore*, 175 B.R. 13, 17 (Bankr.S.D.Ohio 1994) (Bankruptcy Code).

The breadth of the FDCPA does not authorize its revision by judicial fiat. "Whatever merits these and other policy arguments may have, it is not the province of this Court to rewrite the statute to accommodate them." *Artuz v. Bennett*, 531 U.S. 4, 10 (2000). "The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning." *Union Bank v. Wolas*, 502 U.S. 151,

158 (1991).

## VII.  ASSET IS LIABLE FOR FFG'S ACTIONS

Asset is liable for FFG's actions because all of the FFG's actions in connection with sending the letter at issue were performed as agent of and attorney for Asset. (R. 125, ¶ 53.) A debt collector is liable for the actions of its attorney. *Parkis v. Arrow Fin. Servs.*, 07 C 410, 2008 WL 94798, *9 (N.D. Ill. 2008); *Fox v. Citicorp Credit Servs.*, 15 F.3d 1507, 1516 (9th Cir. 1994); *Edwards v. Velocity Investments, LLC*, 1:10 CV 1798, 2011 WL 4007394 (N.D. Ohio Sept. 8, 2011); *Martinez v. Albuquerque Collection Servs., Inc.*, 867 F. Supp. 1495, 1502 (D. N.M. 1994); *Kimber v. Fed. Fin. Corp.,* 668 F. Supp. 1480, 1486 (M.D. Ala. 1987); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3rd Cir. 2000); *Schutz v. Arrow Fin. Servs., LLC*, 465 F. Supp. 2d 872, 876 (N.D. Ill. 2006); *Caron v. Maxwell*, 48 F. Supp.2d 932, 936 (D. Ariz. 1999); *Alger v. Ganick, O'Brien & Sarin*, 35 F. Supp. 2d 148, 153 (D. Mass. 1999); *Randle v. GC Servs.*, 25 F. Supp.2d 849, 851 (N.D. Ill. 1998); *Ditty v. CheckRite*, 973 F. Supp. 1320, 1333 (D. Utah 1997); *Farber v. NP Funding II L.P.*, No. CV-96-4322, 1997 WL 91335 (E.D. N.Y. Dec. 9, 1997). Both defendants acknowledge that FFG was acting as an attorney for Asset. (R. 125, ¶ 53; R. 116-1, p. 96, ¶ 9.) Asset is, therefore, liable for FFG's actions in sending the letter at issue.

## CONCLUSION

The FDCPA requires that a debt collector identify the current creditor or owner of a debt in writing. That requirement is not satisfied by an ambiguous

statement that a debt has been "transferred" to a debt collector.  It is also not

satisfied by an oral statement, much less by the ability of counsel to infer the

required information. The written identification requirement is specifically

required by Congress and serves substantial disclosure, formal, evidentiary

and enforcement objectives. The District Court erred in judicially abrogating it.


Respectfully submitted,


s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark St.
Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (fax)

**CERTIFICATE OF SERVICE**

I, Daniel A. Edelman, hereby certify that a copy of the foregoing document was served via electronic mail, on August 12, 2015, upon the following persons:

Garrett L. Boehm Jr.
Boehmg@jbltd.com

Robert Matthew Horwitz
rhorwitz@dykema.com

Amy R. Jonker
ajonker@dykema.com

Bradley M. Sayad
sayadlawgroup@gmail.com

Theordore W. Seitz
tseitz@dykema.com

Jill M. Wheaton
jwheaton@dykema.com

s/Daniel A. Edelman
Daniel A. Edelman

**STATEMENT PURSUANT TO CIRCUIT RULE 30**

I, Daniel A. Edelman, hereby certify that all of the material required by parts (a) and (b) of Circuit Rule 30 are included within the following Appendix.

s/Daniel A. Edelman
Daniel A. Edelman

**TYPE VOLUME CERTIFICATION**

In accordance with Fed.R.App.P. 32(a)(7)(C), I, Daniel A. Edelman, certify that this brief meets the type-volume limitation of the Seventh Circuit Rule 32(a) in that it contains 10,529 words according to the word-counting feature of Corel WordPerfect X6, the program used to produce it.

s/Daniel A. Edelman
Daniel A. Edelman

**SHORT APPENDIX**

Memorandum Opinion and Order of April 13, 2015 . . . . . . . . . . . . . . . . . . 1-17

Collection Letter to Mary T. Janetos . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Collection Letter to Erik King . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Collection Letter to Pamela M. Fujioka . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Collection Letter to Ignacio Bernave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Memorandum Opinion and Order of March 4, 2013 . . . . . . . . . . . . . . . . 22-39

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MARY T. JANETOS AND ERIK KING,     )
ON BEHALF OF A CLASS, PAMELA FUJIOKA,     )
AND IGNACIO BERNAVE,     )
     )     No. 12 C 1473
     PLAINTIFFS,     )
     )
     v.     )     Judge Thomas M. Durkin
     )
FULTON FRIEDMAN & GULLACE, LLP AND     )
ASSET ACCEPTANCE, LLC,     )
     )
     DEFENDANTS.     )

## MEMORANDUM OPINION AND ORDER

Mary Janetos and Erik King, individually and on behalf of a class, and Pamela Fujioka and Ignacio Bernave, individually, have filed Fair Debt Collections Practices Act ("FDCPA") claims against defendants Fulton Friedman & Gullace, LLP ("FF&G") and Asset Acceptance, LLC ("Asset"). In 2011, FF&G sent debt-collection letters to the plaintiffs on behalf of Asset, the then-current owner of plaintiffs' purported debts. FF&G's form letter stated that the debtor's "account has been transferred from [Asset] to [FF&G]." *See, e.g.*, R. 125 ¶ 20. The plaintiffs allege that the defendants violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692g(a)(2) because the letter is confusing with respect to which of the two entities—Asset or FF&G—is the creditor to whom the plaintiffs owed their debts.[1] The parties have filed cross-

---

[1] The plaintiffs' Second Amended Complaint also included a claim for relief under 15 U.S.C. § 1692c(a)(2). R. 86 ¶¶ 92-96 (Count IV). The Court struck that claim after the plaintiffs indicated that they did not intend to pursue it. R. 84 (*Janetos v.*

motions for summary judgment.[2] For the following reasons, the Court grants the defendants' motion, and denies the plaintiffs' motion.

BACKGROUND

## I.   Factual Background

In 2008 and 2009, Asset filed separate lawsuits against each of the plaintiffs in the Circuit Court of Cook County. R. 125 ¶¶ 13, 23, 31, 39. In each lawsuit, Asset claimed that it had purchased a delinquent debt owed by the plaintiff. *Id.* Janetos won her lawsuit. *Id.* at ¶ 16. Asset voluntarily dismissed its lawsuit against Bernave without prejudice. *Id.* at ¶ 42. And it obtained ex-parte default judgments against King, on August 14, 2008, and Fujioka, on January 4, 2010. *Id.* at ¶¶ 26, 34.

At some point, Asset retained FF&G to collect debts on its behalf. *Id.* at ¶ 53. On or about December 12, 2011, FF&G sent form collection letters to Janetos's and Bernave's counsel, and to King and Fujioka directly. *Id.* at ¶¶ 19, 27, 35, 43. Above the salutation, the letters provided information about the purported debt:

> December 12, 2011
> Re: Asset Acceptance, LLC Assignee of [_____][3]
> Original Creditor Acct #: [_____]
> Fulton, Friedman & Gullace, LLP Acct #: [_____]
> Balance Due: [___]

---

*Fulton Friedman & Gullace, LLP*, No. 12 C 1473, 2013 WL 791325, at *9 (N.D. Ill. Mar. 4, 2013)).

[2] The Court granted FF&G's motion to join Asset's motion for summary judgment. R. 120.

[3] In FF&G's letters to counsel for Janetos and Bernave, the debtor's name appears immediately after "Re," below which the letter states "Asset Acceptance, LLC Assignee of [_____]." *See* R. 125 ¶¶ 21, 45.

*See id.* at ¶¶ 21, 29, 37, 45. The letters that FF&G sent to Janetos's and Bernave's

attorneys stated in relevant part:

> Please be advised that the referenced account has been transferred
> from Asset Acceptance, LLC to Fulton, Friedman & Gullace, LLP . . . .
> If your client has already entered into a payment plan or settlement
> arrangement with Asset Acceptance, LLC, please note that we are
> committed to honoring the same.

*See id.* at ¶¶ 20, 44. The letters that FF&G sent directly to King and Fujioka

contained similar language:

> Please be advised that your above referenced account has been
> transferred from Asset Acceptance, LLC to Fulton, Friedman &
> Gullace, LLP. If you have already entered into a payment plan or
> settlement arrangement with Asset Acceptance, LLC, please note that
> we are committed to honoring the same.

*Id.* at ¶¶ 28, 36. The letters listed a return address for FF&G in Warren, Michigan

below the line "***Detach Lower Portion and Return with Payment***." *Id.* at ¶ 49.

## II.    Procedural Background

On March 4, 2013, the Court denied the defendants' motion for judgment on

the pleadings. *Janetos*, 2013 WL 791325, at *9. The Court considered it a "very close

call" whether the plaintiffs had stated a claim for relief:

> The Court is skeptical that FF&G's letters would confuse an
> unsophisticated consumer, let alone in any material way. The very
> first line of the header states, in King's case, "Re: Asset Acceptance,
> LLC Assignee of AMERISTAR," and in Fujioka's case, "Re: Asset
> Acceptance, LLC Assignee of CAPITAL ONE BANK, NA." Those
> references appear to identify Asset Acceptance as the current creditor
> and owner of the debt. Moreover, although Plaintiffs take issue with
> FF&G's subsequent statement in the letter that the account "has been
> transferred" from Asset Acceptance to FF&G, the FDCPA's definition
> of "creditor" uses the word "transfer" in the same way that FF&G
> apparently intended it. *See* 15 U.S.C. § 803(4) ("The term 'creditor'
> means any person who offers or extends credit creating a debt or to

whom a debt is owned, but such term *does not include* any person to the extent he receives an assignment *or transfer of* a debt in default solely for the purpose of facilitating collection of such debt from another.") (emphasis added). The Court is also uncertain whether it would make any difference to the unsophisticated consumer's decision process if FF&G had actually purchased the debts from Asset Acceptance as opposed to merely acting as Asset Acceptance's collection agent. That appears to be an internal issue largely between Asset Acceptance and FF&G.

*Janetos*, 2013 WL 791325, at *7. Despite these reservations, the Court concluded that the plaintiffs had "shown just enough potential for confusion in order to move past the pleadings and have the opportunity to develop evidence to support their claims." *Id.* at *8. The letters do not expressly identify which party owns the debt, and presumably an "unsophisticated consumer" would not read the letter with the statutory definition of "creditor" in mind. *Id.* The Court also rejected the defendants' argument that the plaintiffs' prior interactions with Asset clarified its role as creditor. *Id.* The fact that Asset claimed to have owned the debt in the past did not rule out the possibility that it later sold the debt to FF&G. *Id.*

During discovery, the plaintiffs elected not to obtain survey evidence or expert testimony to support their claim that the defendants' letters would confuse an "unsophisticated consumer." In lieu of such evidence, the plaintiffs served document requests and interrogatories seeking information about whether the defendants received inquiries from debtors "as to whom the current creditor or owner of the debt is." R. 100-1 at 4-5; *see also* R. 100-2 at 2; R. 100-3 at 2. The defendants objected to these discovery requests as, among other things, unduly burdensome. R. 107 at 12-16 (Trans. of Proceedings, dated May 28, 2013). On May

28, 2013, the Court ruled that the evidence that the plaintiffs sought was only "marginally relevant" to their claims and did not warrant the effort and expense it would take to obtain. *Id.* at 19-20

Finally, on July 21, 2014, the Court certified a class consisting of all individuals in Illinois to whom FF&G sent a letter, similar to the one that it sent to Erik King, between March 1, 2011 and March 21, 2012. R. 138 (*Janetos v. Fulton Friedman & Gullace, LLP*, No. 12 C 1473, 2014 WL 3600518, at *4 (N.D. Ill. July 21, 2014)). It also certified a subclass of individuals to whom FF&G sent letters similar to the one that it sent to Janetos's attorney. *Janetos*, 2014 WL 3600518, at *4.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not

return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

ANALYSIS

The plaintiffs argue that the word "transferred" in FF&G's form letter is misleading, in violation of 15 U.S.C. §§ 1692e, 1692e(10), and 1692g.

## I.    15 U.S.C. 1692e & e(10)

Section 1692e and e(10) prohibit debt collectors from using false, deceptive, or misleading statements in connection with the collection of a debt:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> [. . .]
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(10). Although not expressly required by the statute, the Seventh Circuit has held that a false or misleading representation must be material to support liability. The FDCPA "is designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *See Hahn v. Triumph P'ship LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009); *see also Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) ("Lox must also demonstrate that CDA's attorney fees language constituted a *materially* false statement.") (emphasis in original).

**Short Appendix 6**

### A.    FF&G's Letters to King and Fujioka

With respect to the letters that FF&G sent directly to King and Fujioka, the question is whether the term "transferred" would confuse an "unsophisticated consumer":

> The unsophisticated consumer may be "uninformed, naïve, [and] trusting," *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003), but is not a dimwit, has "rudimentary knowledge about the financial world," and is "capable of making basic logical deductions and inferences," [*Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643, 645 (7th Cir. 2009)] (quoting P*ettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)). Furthermore, because we have rejected the "least sophisticated consumer" standard, a letter must be confusing to "a significant fraction of the population." *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004).

*Lox*, 689 F.3d at 822. The standard is objective, *id.* at 826, and the court treats the issue "as a question of fact." *Id.* at 822. The type of evidence required to show whether a letter is (or is not) misleading depends on the nature of the communication. *Id.* "Extrinsic evidence"—*e.g.*, a consumer survey—is unnecessary when the letter at issue is plainly *not* misleading, or plainly *is* misleading. *Id.* If the language is not misleading or confusing on its face, but may be misleading to an unsophisticated consumer, then the plaintiff must submit extrinsic evidence "to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Id.*

### 1.    Whether the Plaintiffs Were Required to Submit Extrinsic Evidence

The plaintiffs argue that extrinsic evidence is unnecessary because the letter is misleading on its face. In the legal context, the word "transfer" often—but not

**Short Appendix 7**

always—means to convey "title" from one person to another. R. 115 at 9. As the plaintiffs acknowledge, however, the term can also mean "assignment for collection." *Id.* at 10 (citing *Unifund CCR Partners v. Shah*, 993 N.E.2d 518, 520-21 (Ill. App. Ct. 1st Dist. 2013)); *see also Janetos*, 2013 WL 791325, at *7 (citing the FDCPA's definition of "creditor"). And for purposes of the unsophisticated-consumer test, the general, non-legal definition of "transfer" is arguably more apt. *See Janetos*, 2013 WL 791325, at *8 ("[A]lthough the FDCPA's definition of 'creditor' may shed some light on what the word 'transfer' means in the body of the letter, an unsophisticated consumer would not ordinarily think to consult statutory definitions for guidance."). As used in ordinary speech, "transfer" simply means "to convey from one person, place or situation to another." Merriam-Webster Dictionary Online, available at http://www.merriam-webster.com/dictionary/transfer (last visited Apr. 7, 2015). Applying that definition, the letter does not suggest any particular form or method of conveyance. According to the plaintiffs, however, the ambiguity alone is sufficient to establish that the letter was misleading without having to provide extrinsic evidence. R. 115 at 10.

The plaintiffs cite *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) for the proposition that "a collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." But the Seventh and Second Circuits apply different standards in § 1692e cases, which in turn affects the type of proof that a plaintiff must submit to prevail under the statute. In the Second Circuit, a debt-collection letter is misleading if it would

**Short Appendix 8**

deceive the "least sophisticated" consumer, a person lacking "even the sophistication of the average, everyday, common consumer." *Russell*, 74 F.3d at 34; *cf. Lox*, 689 F.3d at 822. Also unlike the Seventh Circuit, the Second Circuit treats the issue as a question of law, not fact. *Russell*, 74 F.3d at 34. Arguably, any ambiguity in a debt-collection letter would support a legal finding that the "least sophisticated consumer" would be misled. The standard in the Seventh Circuit is more demanding. The fact that an unsophisticated consumer *could* interpret FF&G's letter to mean that FF&G owned the debt was sufficient (although barely) to state a claim for relief. At the summary-judgment stage, the plaintiffs must produce evidence that a "significant fraction of the population" *would* interpret it that way:

> Because there is at least one reasonable interpretation of "[p]lease be advised that this office claims a lien for fees plus costs related to this matter" that is not false or misleading, this Court cannot conclude that the statement is misleading as a matter of law. Thus, in order to prevail, the plaintiff would need to put forth evidence beyond the letter in order to show that the unsophisticated consumer would be misled by the statement.

*Omaraie v. A. Alliance Collection Agency, Inc.*, No. 06 C 1727, 2007 WL 2409794, at *6 (N.D. Ill. Aug. 21, 2007). The plaintiffs rely exclusively on the letters themselves and their own affidavits stating that they found the letters confusing. This evidence is insufficient to support summary judgment in their favor, and also insufficient to create a material factual dispute for trial.

## 2.    Whether the Letters are Materially Misleading

Even if the plaintiffs had established that FF&G's letters would confuse a significant fraction of the population, their claims would still fail because the letters

are not materially misleading. *See Hahn*, 557 F.3d at 757-58; *cf. Lox*, 689 F.3d at 827. In *Hahn*, the defendant sent the plaintiff a letter stating that she owed $1,134.55, broken down into "amount due" ($1,051.91) and "interest due" ($82.64). *Id.* at 756. The plaintiff alleged that the letter was misleading because the "amount due" figure included interest that had accrued before the defendant acquired the debt. *Id.* The *Hahn* court held that the letter was truthful, and in the alternative, that the purported falsity was immaterial. *Id.* at 757-58. For the FDCPA's purposes, it is irrelevant whether the debt is expressed as a "bottom line" amount or broken down into principal and interest. *Id.* at 757. "A dollar due is a dollar due." *Id.*; *see also Barnes v. Advanced Call Ctr. Tech., LLC*, 493 F.3d 838, 840-41 (7th Cir. 2007) (applying similar reasoning in a § 1692g case); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010) ("Even if the Complaint had separated $32.89 into interest and finance charges, we can conceive of no action Donohue could have taken that was not already available to her on the basis of the information in the Complaint—nor has Donohue articulated any different action she might have chosen."). Because the letter was both truthful and not materially misleading, the *Hahn* court affirmed summary judgment in the defendant's favor.

By contrast, the court in *Lox* held that the defendant's debt-collection letter was materially misleading. The defendant in *Lox* sent a debt-collection letter to the plaintiff stating that its "client may take legal steps against you and if the courts [sic] award judgment, the court could allow court costs and attorneys['] fees." 689 F.3d at 821. The defendant conceded that it could not have obtained attorneys' fees

**Short Appendix 10**

and costs in connection with a suit to collect the debt. *Id.* at 823. And although couched in conditional language, the implication that the creditor *could* obtain that relief was misleading: "it is improper under the FDCPA to imply that certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass." *Id.* The Court further held that the deception was material:

> In *Hahn* and *Donohue*, the alleged false statements did not, and could not, have any effect on the amount of debt owed by the plaintiff, regardless of when plaintiff decided to pay off the debt. Here, Lox would not have had to pay any additional money if he paid his debt immediately upon receipt of the dunning letters, but if CDA's statement regarding attorney fees were accurate, a decision to contest the debt could have turned out to be much more costly. Whether or not this fact would have led Lox to alter his course of action, it would have undoubtedly been a factor in his decision-making process, and very well could have led to a decision to pay a debt that he would have preferred to contest. The false statement was therefore material.

*Id.* at 827.

This case is more like *Hahn* and *Donohue* than *Lox*. The Court previously noted that it is "uncertain whether it would make any difference to the unsophisticated consumer's decision process if FF&G had actually purchased the debts from [Asset] as opposed to merely acting as [Asset's] collection agent. That appears to be an internal issue largely between [Asset] and FF&G." *Janetos*, 2013 WL 791325, at *7. The plaintiffs have not persuaded the Court that the distinction is material. FF&G's legal capacity with respect to the debt has no bearing on the amount of the debt or an unsophisticated consumer's decision whether to pay it. The plaintiffs have not argued—much less shown—that a check made payable to FF&G and mailed to the address indicated in the letter would be insufficient to extinguish

the underlying debt. Even if payment to FF&G would be insufficient in itself, FF&G would be legally (and ethically) required to transmit those funds to Asset in satisfaction of debts that it had been retained to collect. A payment plan with one would be honored by the other. The ambiguity in FF&G's letters to King and Fujioka is immaterial.

### B.     FF&G's Letters to Counsel for Janetos and Bernave

The letters that FF&G sent to plaintiffs' attorneys are governed by a more rigorous "competent attorney" standard. *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774-75 (7th Cir. 2007). Their attorney, Daniel Edelman, states that "[a]fter review of the letters I was unable to tell from reading the letters whether the Janetos and Bernave accounts were owned by (a) [Asset], (b) FF&G, or (c) some third party that had retained FF&G to collect on those accounts." R. 116-1 at 117. He further states that "[i]t was only after I did some research that I concluded that Asset owned the accounts and had retained FFG to collect on them." *Id.* Mr. Edelman: (1) did "a Google search to determine what kind of business [FF&G] was engaged in and the location of its offices;" and (2) determined "from an internet search of bar numbers that attorneys who formerly had worked for Asset were now working for" FF&G. *Id.* The standard that the Seventh Circuit established in *Evory* presumes that the competent attorney will perform *some* investigation. *See* 505 F.3d at 774-75.[4] The internet searches that Mr. Edelman describes would take a

---

[4] The plaintiffs argue that *Evory*'s "competent attorney standard does not require an attorney to do factual research." R. 127 at 10. The Court disagrees. The *Evory* court observed that some false statements—*e.g.*, a false statement about the "unpaid

competent attorney a few minutes to complete and dispel any confusion created by the word "transferred." Emphasizing *one* accepted definition of that term, and then purporting to construe it in a factual vacuum, elevates form over substance. Also, for the reasons the Court stated in connection with King's and Fujioka's claims, the ambiguity is immaterial. Thus, the defendants are entitled to summary judgment on Janetos's and Bernave's § 1692e and e(10) claims.

## II.    15 U.S.C. § 1692g

Section 1692g requires debt collectors to include certain information in communications with the debtor, including "the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2). The information that § 1692g requires the debt collector to disclose must be presented in a "nonconfusing manner":

> The statute does not say in so many words that the disclosures required by it must be made in a nonconfusing manner. But the courts, our own included, have held, plausibly enough, that it is implicit that the debt collector may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude.

*Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997). The inquiry under §§ 1692e and 1692g is "basically the same":

---

balance of the consumer's debt"—"may be as difficult for a lawyer to see through as a consumer." 505 F.3d at 775. With respect to such statements, the "lawyer might be unable to discover the falsity of the representation without an investigation that he might be unable, depending on his client's resources, to undertake." *Id.* FF&G's letter is not "false." *Cf. id.* ("A sophisticated person is less likely to be either deceived or misled than an unsophisticated one. That is less true if a statement is false."). And as Mr. Edelman's declaration indicates, a competent attorney would be able clarify FF&G's role with minimal effort.

> Whether or not a letter is "false, deceptive, or misleading" (in violation of § 1692e) or "unfair or unconscionable" (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.

*McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 759 (7th Cir. 2006). For reasons the Court has already stated, the plaintiffs have not satisfied their burden to show that FF&G's form letter would confuse an unsophisticated consumer. *See supra* Part I.A.1. The non-binding cases that the plaintiffs cite do not persuade the Court to conclude otherwise.[5]

The parties dispute whether § 1692g, like § 1692e, contains an implied materiality requirement. The Court agrees with the plaintiffs that a defendant may not completely omit information that the statute requires debt collectors to disclose and argue that the information is immaterial. *See, e.g., Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012) (holding that materiality is not an element of a claim under 15 U.S.C. § 1692e(11), which requires debt collectors to identify themselves as such); *see also Massey v. On-Site Manager, Inc.*, 285 F.R.D. 239, 248 (E.D.N.Y. 2012) (holding that materiality is not an element of a claim

---

[5] Some of the § 1692g cases that the plaintiffs rely on were decided at the pleadings stage. *See Lee v. Forester & Garbus LLP*, 926 F. Supp. 2d 482, 486-87 (E.D.N.Y. 2013) (denying the defendant's motion to dismiss); *Walls v. United Collection Bureau, Inc.*, No. 11 C 6026, 2012 WL 1755751, at *2 (N.D. Ill. May 16, 2012) (same); *Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 132-33 (E.D.N.Y. 2007) (same). The debt collector in *Wallace v. Washington Mutual Bank, F.A.* purported to own a debt it had not yet acquired. 683 F.3d 323, 324 (6th Cir. 2012). And the court in *Sparkman v. Zwicker & Assocs., P.C.*, 374 F. Supp. 2d 293, 300-01 (E.D.N.Y. 2005) applied the "least sophisticated consumer" test to a letter that suggested that the plaintiff's purported debt was owned by an unidentified third party.

under § 1681c(a)(2), which bars consumer reporting agencies from reporting civil suits, judgments, and arrest records over seven years old). In this case, however, FF&G's letters disclosed the name of the creditor to whom plaintiffs owed the debt. The question is whether an ambiguous disclosure necessarily violates § 1692g, irrespective of its impact on unsophisticated consumers.

The parties have not cited any Seventh Circuit authority addressing this issue, and case law from other jurisdictions is sparse. The plaintiffs rely on *Lee*, a decision from the Eastern District of New York, which held that materiality is not an element of a claim under § 1692g:

> Defendants fare no better insisting that any misidentification in the Collection Letter was immaterial. As an initial matter, this argument only could apply to the alleged Section 1692e and Section 1692f violations. Section 1692(g)(2) specifically requires debt collectors to identify the creditor to whom the debt is owed in the initial communication or within five days of the initial communication. There is nothing in the statute requiring the identity of the creditor to be "material" to the communication. In addition, even assuming, *arguendo*, that a deceptive statement must be material to violate Section 1692e and Section 1692f, failing to identify the creditor here was not immaterial as a matter of law. The entity to which a debtor owes money potentially affects the debtor in the most basic ways, such as what the debtor should write after "pay to the order of" on the payment check to ensure that the debt is satisfied.

926 F. Supp. 2d at 488. By contrast, the court in *Scheuer v. Jefferson Capital Systems, LLC* applied the materiality requirement to a claims under both §§ 1692e and 1692(a)(2). 43 F. Supp. 3d 772, 777, 783-85 (E.D. Mich. 2014). The defendant in that case sent the plaintiff a letter in which it stated that it was the plaintiff's "current creditor," and also a "debt collector." *Id.* at 774-75. The plaintiff alleged that the letter was confusing because purporting to be both creditor and debt

**Short Appendix 15**

collector with respect to the same debt was contrary to the nuanced distinction the FDCPA draws between those two roles. *Id.* at 780-81; *see, e.g., Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) ("[T]he Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." (citing 15 U.S.C. § 1692a)). The *Scheuer* court held that the letter was not misleading under the statute because the plaintiff's purported confusion was based on hyper-technical legal reasoning that even the savviest consumer would never engage in. 43 F.Supp.3d at 781-83. It further held that held that the plaintiff's claim failed because she did not allege that the letter was *materially* confusing:

> Scheuer missed the point when, in response to the Court's questions about materiality, she repeated her legal argument that Jefferson's self-identification as a "debt collector" and "creditor" (or servicer) was inconsistent with the FDCPA. Even if Jefferson's use of those terms did not square with their definitions under the FDCPA, Scheuer must demonstrate that the inaccuracy somehow impaired the ability of an unsophisticated consumer to respond to the Letter. Scheuer has never been able to do that.

*Id.* at 784.

The Court agrees with *Scheuer* that materiality is an element of a claim under § 1692g(a)(2) based on alleged confusion. As the Court previously noted, the Seventh Circuit's unsophisticated-consumer standard applies to both § 1692e and § 1692g claims. *See McMillan*, 455 F.3d at 759. Section 1692e does not contain an express "materiality" requirement, *cf. Lee*, 926 F. Supp. 2d at 488, but the Seventh Circuit has inferred one from the statute's purpose. The FDCPA "is designed to provide information that helps consumers to choose intelligently, and by definition

**Short Appendix 16**

immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Hahn*, 557 F.3d at 757-58; *see also Wahl*, 556 F.3d at 646 ("Wahl can't win simply by showing that Midland's use of the term 'principal balance' is false in a technical sense; she has to show that it would mislead the unsophisticated consumer."). The Court sees no reason to limit this principle to § 1692e claims, only. So, for the reasons the Court discussed in connection with the plaintiffs' § 1692e claims, the Court concludes that the alleged confusion regarding FF&G's legal capacity is immaterial.[6]

## CONCLUSION

For the foregoing reasons, the Court grants the defendants' motion for summary judgment, R. 109 and R. 117, and denies the plaintiffs' motion for summary judgment, R. 114.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated:  April 13, 2015

---

[6] Given the Court's ruling on the plaintiffs' claims, it is unnecessary to address Asset's argument that it is not vicariously liable for FF&G's conduct. R. 124 at 14-15; R. 146 at 3-5; R. 152 at 1-5.

**Short Appendix 17**

# FULTON FRIEDMAN & GULLACE, LLP

## COLLECTIONS, CONSULTING & LITIGATION
### LICENSED IN AZ, CA, DC, IL, MD, MI, NY, OH, PA, TN & TX

PO Box 2123
WARREN, MI 48090-2123

TOLL FREE 877-496-4802
EXT. 0

December 12, 2011

Re: Mary T Janetos
Asset Acceptance, LLC Assignee of CHASE BANK/ HERITAGE CHASE / CHASE
Original Creditor Acct #: XXXXXXXXXXXX7134
Fulton, Friedman & Gullace, LLP Acct #: 11-215740
Balance Due: $4608.90

Dear Sir/Madam:

Please be advised that the referenced account has been transferred from Asset Acceptance, LLC to Fulton, Friedman and Gullace, LLP. We were advised that you represent the referenced consumer on this matter. Therefore, we are sending this letter to your attention so that you may share it with your client. If you do not represent the person identified above, please notify our office upon your receipt of this letter. If you have any questions, please do not hesitate to contact us.

If your client has already entered into a payment plan or settlement arrangement with Asset Acceptance, LLC, please note that we are committed to honoring the same. Should you have any questions, please do not hesitate to call our offices. All contact should now be directed to:

Fulton, Friedman & Gullace, LLP
P.O. Box 2123
Warren, MI 48090-2123
877-496-4802

Unless the consumer notifies this office within thirty (30) days after receiving this notice that the consumer disputes the validity of this claim or any portion thereof, this office will assume this debt to be valid. If the consumer notifies this office in writing within thirty (30) days from receiving this notice that the consumer disputes the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail the consumer a copy of such judgment or verification. If the consumer requests of this office in writing within thirty (30) days after receiving this notice, this office will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose.**

Very truly yours,

Dave Smith
Collections Team (Non-Attorney)
Phone: 877-496-4802 Ext. 0
Fulton, Friedman & Gullace, LLP

CCGASSE02_OS_0117

***Detach Lower Portion and Return with Payment***

Fulton, Friedman & Gullace, LLP Acct #: 11-215740
Balance Past Due: $4608.90

PO Box 2124
Warren MI 48090-2124

ADDRESS SERVICE REQUESTED

December 12, 2011

**FULTON, FRIEDMAN & GULLACE, LLP**
PO Box 2123
Warren MI 48090-2123

11-215740-OS_0117     679109432

Daniel Edelman, Esq.
120 S Lasalle St 18Th FL
Chicago IL 60603-3403

**Short Appendix 18**

# FULTON FRIEDMAN & GULLACE, LLP

## COLLECTIONS, CONSULTING & LITIGATION

### LICENSED IN AZ, CA, DC, IL, MD, MI, NY, OH, PA, TN & TX

PO Box 2123
WARREN, MI 48090-2123

TOLL FREE 877-692-6186
EXT. 0

December 12, 2011

Re: Asset Acceptance, LLC Assignee of AMERISTAR
Original Creditor Acct #: XX0682
Fulton, Friedman & Gullace, LLP Acct #: ████2109
Balance Due: $17479.24

Dear Erik King:

Please be advised that your above referenced account has been transferred from Asset Acceptance, LLC to Fulton, Friedman & Gullace, LLP. If you have already entered into a payment plan or settlement arrangement with Asset Acceptance, LLC, please note that we are committed to honoring the same. Should you have any questions, please do not hesitate to call our offices. All contact should now be directed to:

Fulton, Friedman & Gullace, LLP
P.O. Box 2123
Warren, MI 48090-2123
877-692-6186

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this claim or any portion thereof, this office will assume this debt to be valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

**This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose.**

Very truly yours,

Dave Smith
Collections Team (Non-Attorney)
Phone: 877-692-6186 Ext. 0
Fulton, Friedman & Gullace, LLP

***Detach Lower Portion and Return with Payment***

CCGASSE02_OS_0118

Fulton, Friedman & Gullace, LLP Acct #: ████2109
Balance Past Due: $17479.24


PO Box 2124
Warren MI 48090-2124

ADDRESS SERVICE REQUESTED

December 12, 2011

11-192109-OS_0118      679313882

|‖‖|‖||‖||‖‖|‖||‖|‖||‖|||‖‖|‖‖|‖||‖|||‖|

Erik King
████████████

FULTON, FRIEDMAN & GULLACE, LLP
PO Box 2123
Warren MI 48090-2123

|‖|‖||‖||‖||‖||‖‖||‖||‖|‖‖||‖|‖||‖‖||‖‖|‖|

**Short Appendix 19**

# FULTON FRIEDMAN & GULLACE, LLP
## COLLECTIONS, CONSULTING & LITIGATION
### LICENSED IN AZ, CA, DC, IL, MD, MI, NY, OH, PA, TN & TX

PO Box 2123
WARREN, MI 48090-2123

TOLL FREE 877-692-6186
EXT. 0



December 12, 2011

Re: Asset Acceptance, LLC Assignee of CAPITAL ONE BANK, NA
Original Creditor Acct #: XXXXXXXXXXXX3984
Fulton, Friedman & Gullace, LLP Acct #: ███3986
Balance Due: $7187.26

Dear Pamela M Fujioka:

Please be advised that your above referenced account has been transferred from Asset Acceptance, LLC to Fulton, Friedman & Gullace, LLP. If you have already entered into a payment plan or settlement arrangement with Asset Acceptance, LLC, please note that we are committed to honoring the same. Should you have any questions, please do not hesitate to call our offices. All contact should now be directed to:

Fulton, Friedman & Gullace, LLP
P.O. Box 2123
Warren, MI 48090-2123
877-692-6186

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this claim or any portion thereof, this office will assume this debt to be valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

**This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose.**

Very truly yours,

Dave Smith
Collections Team (Non-Attorney)
Phone: 877-692-6186 Ext. 0
Fulton, Friedman & Gullace, LLP

***Detach Lower Portion and Return with Payment***          CCGASSE02_OS_0118

Fulton, Friedman & Gullace, LLP Acct #: ███3986
Balance Past Due: $7187.26



PO Box 2124
Warren MI 48090-2124

ADDRESS SERVICE REQUESTED

December 12, 2011

███3986-OS_0118    679327421

Pamela M Fujioka

**FULTON, FRIEDMAN & GULLACE, LLP**
PO Box 2123
Warren MI 48090-2123

**Short Appendix 20**

# FULTON FRIEDMAN & GULLACE, LLP

## COLLECTIONS, CONSULTING & LITIGATION
### LICENSED IN AZ, CA, DC, IL, MD, MI, NY, OH, PA, TN & TX

PO BOX 2123
WARREN, MI 48090-2123

TOLL FREE 877-496-4802
EXT. 0

December 12, 2011

Re: Ignacio Bernave
Asset Acceptance, LLC Assignee of HARLEM FURNITURE / WORLD FINANCIAL NETWORK NATIONAL BANK
Original Creditor Acct #: XXXXXXXXXXXX4431
Fulton, Friedman & Gullace, LLP Acct #: 11-214803
Balance Due: $5177.79

Dear Sir/Madam:

Please be advised that the referenced account has been transferred from Asset Acceptance, LLC to Fulton, Friedman and Gullace, LLP.  We were advised that you represent the referenced consumer on this matter.  Therefore, we are sending this letter to your attention so that you may share it with your client. If you do not represent the person identified above, please notify our office upon your receipt of this letter. If you have any questions, please do not hesitate to contact us.

If your client has already entered into a payment plan or settlement arrangement with Asset Acceptance, LLC, please note that we are committed to honoring the same.  Should you have any questions, please do not hesitate to call our offices.  All contact should now be directed to:

Fulton, Friedman & Gullace, LLP
P.O. Box 2123
Warren, MI 48090-2123
877-496-4802

Unless the consumer notifies this office within thirty (30) days after receiving this notice that the consumer disputes the validity of this claim or any portion thereof, this office will assume this debt to be valid.  If the consumer notifies this office in writing within thirty (30) days from receiving this notice that the consumer disputes the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail the consumer a copy of such judgment or verification.  If the consumer requests of this office in writing within thirty (30) days after receiving this notice, this office will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**This is an attempt to collect a debt by a debt collector.  Any information obtained will be used for that purpose.**

Very truly yours,

Dave Smith
Collections Team (Non-Attorney)
Phone: 877-496-4802 Ext. 0
Fulton, Friedman & Gullace, LLP

***Detach Lower Portion and Return with Payment***

CCGASSE02_OS_0117

Fulton, Friedman & Gullace, LLP Acct #: 11-214803
Balance Past Due: $5177.79



PO Box 2124
Warren MI 48090-2124

ADDRESS SERVICE  REQUESTED

December 12, 2011

FULTON, FRIEDMAN & GULLACE, LLP
PO Box 2123
Warren MI 48090-2123

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

11-214803-OS_0117          679108757
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
Daniel Edelman, Esq.
120 S La Salle St 18Th FL
Chicago IL 60603-3403

**Short Appendix 21**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Mary T. Janetos and Erik King, | ) | |
| on behalf of plaintiffs and a class, | ) | |
| | ) | No. 12 C 1473 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| Fulton Friedman & Gullace, LLP, and | ) | |
| Asset Acceptance, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiffs Mary Janetos and Erik King filed this purported class action against Fulton Friedman & Gullace, LLP ("FF&G") and Asset Acceptance, LLC ("Asset Acceptance") under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA"). Plaintiff Pamela Fujioka filed an individual FDCPA claim against FF&G and Asset Acceptance (Case No. 12 CV 2128); on July 19, 2012, Judge Lee consolidated her claim into this action. R. 53. Proposed Plaintiff Ignacio Bernave seeks to join this action to assert an individual FDCPA claim as well. In short, Plaintiffs all allege that FF&G, in an attempt to collect purported debts on behalf of Asset Acceptance, sent them or their counsel a form letter on December 12, 2011 that failed to clearly identify which entity actually owns the debt, FF&G or Asset Acceptance. Presently before the Court is Defendants' Joint Motion for Judgment on the Pleadings, R. 54, and Plaintiffs' Motion for Leave to File Second Amended and Consolidated Complaint. R. 59. For the reasons explained below,

1

**Short Appendix 22**

Defendants' Joint Motion for Judgment on the Pleadings is denied and Plaintiffs'
Motion for Leave is granted.

## Legal Standard

Rule 12(c) allows for judgment on the pleadings. In reviewing a Rule 12(c)
motion, courts employ the same standard that applies when reviewing a motion to
dismiss for failure to state a claim under Rule 12(b)(6). *Buchanan-Moore v. Cnty. of
Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). A complaint must include "a short
and plain statement of the claim showing that the pleader is entitled to relief." Fed.
R. Civ. P. 8(a)(2). Under notice pleading standards, a plaintiff's "factual allegations
must be enough to raise a right to relief above the speculative level." *Bell Atlantic v.
Twombly*, 550 U.S. 544, 555 (2007). Put differently, a "complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible
on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.
at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light
most favorable to the plaintiff, taking as true all well-pleaded factual allegations
and making all possible inferences from the allegations in the plaintiff's favor."
*AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). Courts also "consider
documents attached to the complaint as part of the complaint itself." *Reger Dev.,
LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010).

A plaintiff may seek leave to amend its complaint under Rule 15(a)(2).
Although a court "should freely give leave to amend when justice so requires," Fed.
R. Civ. P. 15(a)(2), a court "need not allow an amendment when there is undue

**Short Appendix 23**

delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile." *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001). A new claim is futile if it could not survive a motion to dismiss. *London v. RBS Citizens, N.A.*, 600 F.3d 742, 747 n.5 (7th Cir. 2010).

Thus, for both the Rule 12(c) and Rule 15(a) motions pending before the Court, the issue is whether Plaintiffs—in their Amended Complaint, R. 13, and proposed Second Amended and Consolidated Complaint, R. 59-1—fail to state a plausible claim for relief under the FDCPA. The following background is a summary of the relevant allegations, viewed in the light most favorable to Plaintiffs.

## Background

Asset Acceptance is a debt collection agency. FF&G is a law firm that manages Asset Acceptance's collection litigation. Asset Acceptance purchases debts from original creditors, including banks, credit card companies, and retail stores. In some cases, after attempting to collect a debt itself, Asset Acceptance refers the matter to FF&G for additional collection efforts. In those cases, Asset Acceptance retains ownership of the debt and FF&G acts as its agent.[1]

**Mary Janetos**

In May 2009, Asset Acceptance sued Janetos in state court to collect an alleged $3,327 credit card debt. Asset Acceptance was represented by an in-house attorney, not FF&G. Janetos was represented by her current counsel, Daniel

---

[1] There is no dispute that Asset Acceptance and FF&G are each "debt collectors" as defined by the FDCPA, 15 U.S.C. §1692a(6).

**Short Appendix 24**

Edelman of Edelman, Combs, Latturner & Goodwin, LLC. In July 2009, after trial, the state court entered judgment in Janetos' favor.

Although Asset Acceptance lost at trial, Asset Acceptance apparently referred the matter to FF&G for additional collection efforts. On December 12, 2011, FF&G sent a letter to Janetos' counsel, Daniel Edelman, attempting to collect the extinguished debt. R. 13, Am. Compl., Ex. C.[2] The FF&G letterhead states, "Fulton Friedman & Gullace, LLP, Collections, Consulting & Litigation." *Id*. The heading of the letter provides details of the debt:

Re: Mary T Janetos
Asset Acceptance, LLC Assignee of CHASE BANK/HERITAGE CHASE/CHASE
Original Creditor Acct #: XXXXXXXXXXXX7143
Fulton, Friedman & Gullace, LLP Acct #: 11-215740
Balance Due: $4608.90

*Id*. The body of the letter begins, "Please be advised that the referenced account has been transferred from Asset Acceptance, LLC to Fulton, Friedman and Gullace, LLP." *Id*. The letter then explains that it is an attempt to collect a debt, that all contact should be directed to FF&G, and that if Janetos "has already entered into a payment plan or settlement arrangement with Asset Acceptance, LLC, please note that we are committed to honoring the same." *Id*. The letter is signed by Dave Smith, "Collections Team (Non-Attorney)." *Id*.

---

[2] Janetos has already settled her individual claims against Asset Acceptance and FF&G for continuing to attempt collection on a debt that the state court judgment extinguished. The only claims remaining before the Court relate to whether FF&G's letter otherwise complied with the FDCPA.

**Short Appendix 25**

**Erik King**

In May 2008, Asset Acceptance sued King in state court to collect an alleged $13,107 car loan debt. Asset Acceptance was represented by an in-house attorney, not FF&G. In August 2008, the state court entered a default judgment against King. Post-judgment collection proceedings followed.

At some point, Asset Acceptance referred the matter to FF&G for additional collection efforts apart from the post-judgment collection proceedings in the state court case. On December 12, 2011, FF&G sent a letter to King. The body of the letter is the same as the Janetos letter. The heading states:

Re: Asset Acceptance, LLC Assignee of AMERISTAR
Original Creditor Acct #: XX0682
Fulton, Friedman & Gullace, LLP Acct #: XX-XX2109
Balance Due: $17479.23

R. 13, Am. Compl., Ex. D.

**Pamela Fujioka**

Fujioka is in the same position as King. In November 2009, through in-house counsel, Asset Acceptance sued Fujioka in state court to collect an alleged $5,887 credit card debt. In January 2010, the state court entered a default judgment against Fujioka. Post-judgment collection proceedings followed.

On December 12, 2011, FF&G sent a letter to Fujioka. The body of the letter is the same as the Janetos and King letters. The heading states:

Re: Asset Acceptance, LLC Assignee of CAPITAL ONE BANK, NA
Original Creditor Acct #: XXXXXXXXXXXX3984
Fulton, Friedman & Gullace, LLP Acct #: XX-XX3986
Balance Due: $7187.26

5

**Short Appendix 26**

R. 59-1, Second Am. Compl., Ex. G.

**Ignacio Bernave**

In April 2009, through in-house counsel, Asset Acceptance sued Bernave in state court to collect an alleged $4,199 credit card debt. Bernave was represented by his current counsel, Daniel Edelman. In July 2009, on the day of trial, Asset Acceptance dismissed the lawsuit without prejudice.

On December 12, 2011, FF&G sent a letter to Bernave's counsel. The body of the letter is the same as the Janetos, King, and Fujioka letters. The heading states:

Re: Ignacio Bernave
Asset Acceptance, LLC Assignee of HARLEM FURNITURE/WORLD FINANCIAL
NETWORK NATIONAL BANK
Original Creditor Acct #: XXXXXXXXXXX4431
Fulton, Friedman & Gullace, LLP Acct #: 11-214803
Balance Due: $5177.79

R. 59, Second Am. Compl., Ex. K.

## Analysis

**I.     15 U.S.C. § 1692g**

In their First Amended Complaint, Plaintiffs allege that FF&G's December 12, 2011 letters violate 15 U.S.C. § 1692g(a)(2). Section 1692g addresses "[v]alidation of debts" and provides that:

> (a)     Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1)     the amount of the debt;

6

**Short Appendix 27**

**(2)     the name of the creditor to whom the debt is owed;**

(3)     a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4)     a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5)     a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g (emphasis added).

Plaintiffs allege that it is unclear from FF&G's December 12, 2011 letters whether FF&G purchased the purported debts from Asset Acceptance or is merely attempting to collect the debts as an agent of Asset Acceptance or some other entity. Plaintiffs therefore allege that the letters fail to clearly identify the current creditor that actually owns the debts in violation of § 1692g(a)(2).

**A.     Applicability of Section 1692g**

As an initial matter, the parties dispute whether § 1692g applies to FF&G's letters. By its terms, § 1692g applies to initial communications. For each Plaintiff here, Asset Acceptance itself began collection efforts on the purported debts several years before FF&G sent the letters at issue. Thus, although Plaintiffs allege that

7

**Short Appendix 28**

the December 12, 2011 letters were the "initial communications" from FF&G, Am.
Compl. ¶¶ 25, 32, they do not, and presumably cannot, allege that FF&G's letters
were the "initial communications" with respect to these purported debts.

Courts are split on whether § 1692g applies to initial communications from
each successive debt collector. Some courts have reasoned that § 1692g refers in the
singular to "the initial communication," and that as a result, successive debt
collectors are not required to send another validation notice. *See, e.g., Paris v.
Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1222 (W.D. Wash. 2011); *Waters v.
J.C. Christensen & Assoc.*, No. 08-11795, 2011 WL 134452, *10-11 (D. Mass. Mar. 4,
2011); *Marshall v. Deutsche Bank Nat'l Trust Co.*, No. 10 CV 754, 2011 WL 345988,
at *5 (E.D. Ark. Feb. 1, 2011); *McNall v. Credit Bureau of Josephine Cnty.*, 689 F.
Supp. 2d 1265, 1269 (D. Or. 2010); *Senftle v. Landau*, 390 F. Supp. 2d 463, 473 (D.
Md. 2005); *Ditty v. CheckRite, Ltd.*, 973 F. Supp. 1320, 1329 (D. Utah 1997). Two
courts in this District have endorsed the view that § 1692g does not apply to an
attorney attempting to collect a debt where a debt collection agency already had
substantial contact with the debtor. *See Weinstein v. Fink*, No. 99 C 7222, 2001 WL
185194, at *7 (N.D. Ill. Feb. 26, 2001) (Guzman, J.); *Thomas v. Law Firm of
Simpson & Cybak*, No. 00 C 8211, 2001 WL 1516746, at *3-4 (N.D. Ill. Nov. 28,
2001) (Coar, J.), *rev'd on other grounds*, 392 F.3d 914 (7th Cir. 2004).

Other courts have found that § 1692g's language is ambiguous and then
broadly construed the statutory language in order to advance the FDCPA's goals.
These courts concluded that § 1692g applies to the initial communications from

**Short Appendix 29**

each successive debt collector. *See, e.g., Stair v. Thomas & Cook*, 254 F.R.D. 191, 195-97 (D.N.J. 2008); *Turner v. Shenandoah Legal Group, P.C.*, No. 06 CV 45, 2006 U.S. Dist. LEXIS 39341, at \*29-40 (E.D. Va. June 12, 2006); *Sutton v. Law Offices of Alexander Lawrence*, No. 90-369, 1992 U.S. Dist. LEXIS 22761, at \*7-9 (D. Del. June 17, 1992); *Griswold v. J & R Anderson Bus. Servs., Inc.*, No. 82-1474, 1983 U.S. Dist. LEXIS 20365, at \*2-4 (D. Or. Oct. 24, 1983). At least one court in this District has adopted this broader reading of § 1692g. *See Francis v. Snyder*, 389 F. Supp. 2d 1034, 1040 n. 2 (N.D. Ill. 2005) (Grady, J.) ("The requirement of providing valid disclosures under § 1692g applies to each debt collector.").

This Court has reviewed the statute and relevant case law and agrees with the latter approach. Although the Court of course must begin with the plain language of the statute, § 1692g itself is ambiguous. It refers in the singular to "the initial communication with a consumer in connection with the collection of any debt," but the very next clause refers to "a debt collector." As a result, § 1692g is not clear on its face whether "the initial communication" requirements apply once to each debt or once to each debt collector who attempts to collect a debt. Section 1692g's plain language does not support one reading over the other.[3]

---

[3] Some courts have reasoned that 15 U.S.C. § 1692e(11) (distinguishing between initial and subsequent communications to a debtor) shows that Congress knew the difference between initial and successive debt collectors and could have explicitly required that both provide the § 1692g validation notice if that was its intent. *See, e.g., Waters*, 2011 WL 134452, at \*11. But that reasoning cuts both ways. If Congress knew the difference and intended that § 1692g apply only to the first debt collector, it could have explicitly said that § 1692g applies only to the first debt collector. As discussed above, it did not. Again, § 1692e(11)'s language does not support one reading of § 1692g over the other.

9

**Short Appendix 30**

In the absence of a clear statutory directive, "[b]ecause the FDCPA is a remedial statute, [courts have] construe[d] its language broadly, so as to effect its purpose." *Stair*, 254 F.R.D. at 196 (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)). *See also Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1171 (9th Cir. 2006) ("[B]ecause the FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors, it is logical for debt collectors—repeat players likely to be acquainted with the legal standards governing their industry—to bear the brunt of the risk."); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) ("As the Supreme Court has held in the general context of consumer protection—of which the [FDCPA] is a part—'it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.'") (quoting *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 393 (1965)).

Given the FDCPA's purpose of curbing abusive debt collection practices, the Court declines to read a loophole into § 1692g that would exempt successive debt collectors from sending a validation notice. Plaintiffs provide a laundry list of reasons why each successive debt collector should be required to comply with § 1692g. R. 67 at 11-15. But the Court does not need to look any further than Plaintiff Janetos' case, which readily illustrates that § 1692g is not superfluous when a new debt collector enters the picture. In her case, while Asset Acceptance was initially attempting to collect the purported debt, Janetos prevailed at trial and obtained a judgment extinguishing the debt. Nonetheless, for one reason or another,

10

**Short Appendix 31**

Asset Acceptance sent her account to FF&G for further collection efforts. The Court assumes that this was some sort of mistake, but since mistakes (or worse) certainly happen, it is important that successive debt collectors send a § 1692g validation notice before commencing full-scale collection efforts. The validation notice helps to ensure that any mistakes like this are promptly resolved.

Moreover, it is not a heavy burden for each debt collector to comply with § 1692g's validation requirements. FF&G's letters were already an attempt to send a validation notice pursuant to § 1692g—they contain the precise language required by § 1692g(3)-(5)—which is at least a tacit acknowledgment that FF&G knew it was required to send a validation notice. Indeed, in light of the split authority on whether § 1692g applies, a successive debt collector would be foolish to ignore § 1692g and run the risk that a court might later find FDCPA violations. The Federal Trade Commission has also long commented that successive debt collectors in FF&G's position should comply with § 1692g. *See, e.g.,* 53 Fed. Reg. 50097, 50108 (Dec. 13, 1988) (explaining that "an attorney who regularly attempts to collect debts by means other than litigation . . . must provide the required notice, even if a previous debt collector (or creditor) has given such notice").

In short, the Court finds that § 1692g applies to the initial communication in connection with the collection of a debt by each successive debt collector. This result comports with both the text of § 1692g and the FDCPA's overarching purpose. The Court now turns to whether Plaintiffs state a plausible claim that FF&G's December 12, 2011 letters actually violate § 1692g.

11

**Short Appendix 32**

**B.     King and Fujioka – "Unsophisticated Consumer" Standard**

FF&G sent two of the letters at issue directly to consumers, Plaintiffs King and Fujioka. A debt collector violates § 1692g if it either fails to provide required information or provides required information "in a manner that is 'confusing' to the consumer." *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). The Court analyzes collection letters under an objective "unsophisticated consumer" standard. *See, e.g., Durkin v. Equifax Check Servs.*, 406 F.3d 410, 414-15 (7th Cir. 2005). This "hypothetical" unsophisticated consumer "is not as learned in commercial matters as are federal judges, but neither is he completely ignorant." *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000). The unsophisticated consumer "possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences." *Id.* (citations omitted). Under this objective standard, a plaintiff's "anecdotal proclamations of being confused will not suffice." *Durkin*, 406 F.3d at 414-15. A collection letter is not confusing "unless a significant fraction of the population would be similarly misled." *Pettit*, 211 F.3d at 1060.

Surprisingly, none of the parties here discuss the rule in the Seventh Circuit that the unsophisticated consumer standard is generally a fact issue that cannot be decided at the pleading stage. As Judge Easterbrook explained in *Walker v. National Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999):

> How a particular notice affects its audience is a question
> of fact, which may be explored by testimony and devices

12

**Short Appendix 33**

> such as consumer surveys. We held accordingly in
> *Johnson v. Revenue Management Corp.*, 169 F.3d 1057
> (7th Cir. 1999), that a complaint alleging that a particular
> notice confuses recipients may not be dismissed under
> Fed. R. Civ. P. 12(b)(6)—not only because 'this notice is
> confusing' states a claim on which relief may be granted,
> but also because district judges are not good proxies for
> the 'unsophisticated consumers' whose interests the
> statute protects.

*See also Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 575 (7th Cir. 2004) ("A judge might be mistaken in supposing that a letter that was clear to him was clear to unsophisticated debtors . . . and so it is open to a plaintiff, in any but the clearest case, to present objective evidence of confusion, for example the results of a consumer survey."); *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326-27 (7th Cir. 2000) (explaining that "confusion is a question of fact rather than a question of law, so plaintiffs are entitled to present empirical evidence that might show the dunning letter in question to be confusing in the eyes of the unsophisticated consumer," and that "a FDCPA complaint states a legal claim, and therefore a FDCPA complaint survives a motion to dismiss under Rule 12(b)(6)[,] simply by alleging that a dunning letter was confusing").

This general rule does not mean that the unsophisticated consumer test can *never* be resolved at the pleading stage. A letter might be so clear that a plaintiff has no plausible § 1692g claim. *See, e.g., Ruth v. Triumph P'ships*, 577 F.3d 790, 800 (7th Cir. 2009) (recognizing a category of cases "involving statements that plainly, on their face, are not misleading or deceptive"). "[A] plaintiff fails to state a claim and dismissal is appropriate as a matter of law when it is 'apparent from a reading

**Short Appendix 34**

of the letter that not even a significant fraction of the population would be misled by it.'" *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012) (quoting *Taylor*, 365 F.3d at 574). Thus, "as a matter of law, [courts will] not entertain a plaintiff's bizarre, peculiar, or idiosyncratic interpretation of a collection letter." *McMillan*, 455 F.3d at 758. *See also Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776-77 (7th Cir. 2007) (explaining that a claim also may be resolved on the pleadings if the plaintiff rests on the letters themselves and does not intend to offer extrinsic evidence, the defendant used clear statutory language, or the statement at issue clearly was immaterial, among other things).

This case presents a very close call at the pleading stage. Plaintiffs allege that FF&G's letters violate § 1692g by failing to clearly identify which entity is the current creditor that actually owns the purported debts, FF&G or Asset Acceptance. Plaintiffs allege that although Asset Acceptance still owns the debts and was only using FF&G as its agent for further collection efforts, the letters could lead a consumer to believe that the debts may have been sold to FF&G.

The Court is skeptical that FF&G's letters would confuse an unsophisticated consumer, let alone in any material way. The very first line of the header states, in King's case, "Re: Asset Acceptance, LLC Assignee of AMERISTAR," and in Fujioka's case, "Re: Asset Acceptance, LLC Assignee of CAPITAL ONE BANK, NA." Those references appear to identify Asset Acceptance as the current creditor and owner of the debt. Moreover, although Plaintiffs take issue with FF&G's subsequent statement in the letter that the account "has been transferred" from Asset

14

**Short Appendix 35**

Acceptance to FF&G, the FDCPA's definition of "creditor" uses the word "transfer" in the same way that FF&G apparently intended it. *See* 15 U.S.C. § 803(4) ("The term 'creditor' means any person who offers or extends credit creating a debt or to whom a debt is owned, but such term *does not include* any person to the extent he receives an assignment *or transfer* of a debt in default solely for the purpose of facilitating collection of such debt from another.") (emphasis added). The Court is also uncertain whether it would make any difference to the unsophisticated consumer's decision process if FF&G had actually purchased the debts from Asset Acceptance as opposed to merely acting as Asset Acceptance's collection agent. That appears to be an internal issue largely between Asset Acceptance and FF&G.

Nonetheless, because the unsophisticated consumer standard generally presents a fact issue, the Court believes that Plaintiffs have shown just enough potential for confusion in order to move past the pleadings and have the opportunity to develop evidence to support their claims. FF&G's letters do not expressly identify which entity currently owns the purported debts—the headers contain various information, including references to both Asset Acceptance and FF&G, but do not actually label either entity as the owner of the purported debts. Moreover, although the FDCPA's definition of "creditor" may shed some light on what the word "transfer" means in the body of the letter, an unsophisticated consumer would not ordinarily think to consult statutory definitions for guidance.[4]

---

[4] Indeed, although the parties have offered various dictionary definitions of the word "transfer," none of the parties raise 15 U.S.C. § 803(4) in their briefs.

**Short Appendix 36**

FF&G and Asset Acceptance also argue that the letters should be clear to anyone with knowledge of the collection history of these accounts. But even if the recipients of these letters were familiar with Asset Acceptance's prior collection efforts, that would not resolve the alleged confusion in this case over whether Asset Acceptance had just sold their debts to a new entity, FF&G.

As a result, Plaintiff King states a plausible claim for relief in the Amended Complaint, and Plaintiff Fujioka's claim in the proposed Second Amended and Consolidated Complaint is not futile, at least at this stage.

### C.     Janetos and Bernave – "Competent Attorney" Standard

FF&G sent the other two letters at issue to counsel for Plaintiffs Janetos and Bernave. As a result, the Court analyzes these letters under the more rigorous "competent attorney" standard. *See, e.g., Evory*, 505 F.3d at 774-75 (explaining that the unsophisticated consumer test "is inappropriate for judging communications with lawyers"). This heightened standard applies because "[a] sophisticated person is less likely to be either deceived or misled than an unsophisticated one." *Id.* Thus, under the competent attorney standard, "a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable." *Id.*

For the same reasons discussed above, the Court is even more skeptical that FF&G's letters would confuse a competent lawyer, let alone in any material way. Moreover, although the case law on the competent attorney standard is far less developed, it appears that this issue would be more susceptible to resolution on the

**Short Appendix 37**

pleadings. Judge Easterbrook's concern that judges may not be good proxies for unsophisticated consumers does not apply in this context; the Court can more easily judge what might confuse or mislead a competent attorney.

Nonetheless, the Court again declines to resolve this issue on the pleadings. As discussed above, Plaintiffs have shown just enough potential for confusion stemming from the letters. Although a competent lawyer would be familiar with Asset Acceptance's prior collection efforts and would likely recognize from the letterhead that FF&G is a law firm, the lawyer still would not necessarily know whether Asset Acceptance had just sold his client's purported debts to FF&G or if FF&G was merely acting as Asset Acceptance's collection agent.

As a result, Plaintiff Janetos states a plausible claim for relief in the Amended Complaint, and Plaintiff Bernave's claim in the proposed Second Amended and Consolidated Complaint is not futile, at least at this stage.

## II.    15 U.S.C. § 1692e

In their proposed Second Amended and Consolidated Complaint, Plaintiffs allege that FF&G's letters also violate the more general requirements of 15 U.S.C. § 1692e and e(10), which provide that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> *        *        *

17

**Short Appendix 38**

    (10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Asset Acceptance and FF&G argue that Plaintiffs' motion for leave should be denied because their § 1692e claim is futile. Although the Court is skeptical of this claim as well, just as Plaintiffs state a plausible claim that FF&G's letters are confusing to an unsophisticated consumer or competent attorney, Plaintiffs also state a plausible claim that FF&G's letters are deceptive or misleading. As a result, the Court cannot say at this stage that the claim is futile.

## Conclusion

For the foregoing reasons, Defendants' Joint Motion for Judgment on the Pleadings is denied and Plaintiffs' Motion for Leave to File Second Amended and Consolidated Complaint is granted. In granting Plaintiffs' Motion for Leave, the Court strikes Count IV in Plaintiffs' proposed Second Amended and Consolidated Complaint, which asserts a claim under 15 U.S.C. § 1692c(a)(2) that Plaintiffs have represented they do not intend to pursue. R. 68 at 2 n.2.


    ENTERED:


    _Thomas M Durkin_
    _____
    Honorable Thomas M. Durkin
    United States District Judge

Dated:  March 4, 2013

18

**Short Appendix 39**